# IN THE COURT OF APPEALS OF TENNESSEE, AT JACKSON

_____

)



October 6, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **ELECTRIC CONTROLS, ET AL.,** | ) | Shelby County Chancery Court |
| | ) | No. 101567-2 R.D. |
| Plaintiffs. | ) | |
| | ) | |
| VS. | ) | C.A. No. 02A01-9712-CH-00304 |
| | ) | |
| **PONDEROSA FIBRES OF AMERICA,** | ) | |
| **ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

From the Chancery Court of Shelby County at Memphis.
**Honorable Floyd Peete, Jr., Chancellor**


**Henry C. Shelton, III**, KRIVCHER MAGIDS, PLC, Memphis, Tennessee
Attorney for Defendant/Appellant Vanderbilt Industrial Contracting Corporation.


**William M. Jeter**,
**James F. Horner**,
GLASSMAN, JETER, EDWARDS AND WADE, P.C., Memphis, Tennessee
Attorneys for Defendant/Cross-Plaintiff/Appellee Titan Contracting & Leasing Co., Inc.


**Michael G. McLaren,**
**John H. Dotson**,
THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee
Attorneys for Defendant/Cross-Plaintiff/Appellee Kajima International, Inc.


OPINION FILED:


**REVERSED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Not Participating)

Defendant Vanderbilt Industrial Contracting Corporation (VICC) appeals the trial court's judgments which awarded attorney's fees to two of VICC's co-defendants in this lawsuit, Kajima International, Inc., and Titan Contracting and Leasing Company. We reverse the trial court's judgments based upon our conclusion that the relief awarded exceeds the scope of the relief requested by the parties' pleadings.

This litigation began in June 1992 when Electric Controls and Service Company, on behalf of itself and other creditors, filed suit to enforce a mechanics' and materialmen's lien on the real property located at 1535 North Thomas in Memphis, Tennessee. Electric Controls previously had provided labor, material, services, and equipment for a construction project on the property known as the Shelby Tissue Project. Electric Controls' complaint named as defendants, among others, the project's owner, the project's general contractor, and various subcontractors. According to Electric Controls' complaint, Kajima, the general contractor of the Shelby Tissue Project, had subcontracted the construction of the project to Titan and VICC. Titan, in turn, subcontracted its portion of the construction to VICC. Consequently, VICC and its subcontractors, including Electric Controls, performed all of the construction on the Shelby Tissue Project. Kajima, Titan, and VICC are the only parties to this appeal.

Shelby Tissue, Inc., the project's owner, filed an answer to Electric Controls' complaint. In addition to answering the complaint, Shelby Tissue filed a cross-claim for breach of contract against Kajima and its surety. Shelby Tissue's cross-claim alleged that Kajima had breached the parties' construction contract by, *inter alia*,

> (a)     Failing to complete the Project within the time required by the Contract;
>
> (b)     Failing to pay the subcontractors, suppliers and materialmen for work, labor and materials incorporated into the Project;
>
> (c)     Failing to employ subcontractors and materialmen with adequate skills and knowledge to execute and perform work on the Project in a skillful and workmanlike fashion;
>
> (d)     Failing to keep the Project free and clear of Mechanics' and Materialmen's Liens and other encumbrances;
>
> (e)     Failing to construct the Project in accordance with plans and specifications for the Project;
>
> (f)     Failing to indemnify and hold Shelby Tissue harmless from claims and liens of subcontractors and material suppliers to the Project.

Faced with Shelby Tissue's breach of contract claim, Kajima filed two cross-claims for indemnity, one against Titan and its surety and the other against VICC. Kajima's cross-claim against VICC sought damages "for breach of contract, contribution, indemnity and/or compensatory and punitive damages, including attorneys fees, costs of litigation and pre-judgment interest." In support of Kajima's request for attorney's fees, which is the subject of this appeal, Kajima's cross-complaint alleged that,

(a) [Shelby Tissue] has sued Kajima, claiming that work performed on the job site was defective.  Kajima denies those allegations, but if any of the allegations of [Shelby Tissue] are found to be true, Kajima is entitled to indemnity, contribution and/or damages from [VICC] for any such work that may be deemed to be defective and which was performed by [VICC] or at its direction or under its supervision.  The damages claimed by Kajima are equal to that amount which might be awarded against Kajima, plus attorney fees and costs and pre-judgment interest.

. . . .

(c) Kajima has been sued by [Shelby Tissue] in this matter, on the basis that the work performed on [the Project] was not performed in a timely manner.  Kajima denies these allegations, but in the event these allegations are held to be true to the extent [VICC] is responsible, Kajima is entitled to an award of damages against [VICC], equal to any amount awarded against Kajima, plus attorney fees, costs and pre-judgment interest.

(d) Kajima has been sued by [Shelby Tissue] on the basis that a subcontractor of [VICC], [Electric Controls], lacked the financial wherewithal to properly perform work on [the Project].  Kajima denies this allegation, but if that allegation is held to be true, and if Kajima is assessed damages as a result of that allegation, Kajima claims that to the extent [VICC] is responsible, [VICC] should be liable to Kajima for any damages assessed against Kajima, plus attorney fees, costs and pre-judgment interest.

(e) Kajima has been sued in this matter by [Shelby Tissue] for alleged improper design and/or improper workmanship in connection with [the Project].  To the extent such design or workmanship is attributable to [VICC] and/or its subcontractors, Kajima is entitled to an award of damages against [VICC], in an amount equal to that assessed against Kajima, plus attorney fees, costs and pre-judgment interest.

(f) To the extent [VICC] was obligated to perform a significant and substantial portion of the work on [the Project], Kajima is entitled to contribution, indemnity and/or breach of contract damages, or other damages against [VICC], equal to any judgment or award of damages against Kajima in connection with that Project, plus attorney fees, costs and pre-judgment interest.  This claim of Kajima encompasses not only all causes of action alleged by [Shelby Tissue], but also all causes of action in connection with this job site against Kajima by any party.

Kajima attached to its cross-complaint a copy of the subcontract executed by Kajima and VICC, which

contained the following indemnification clause:

[VICC] shall indemnify, hold harmless and defend [Kajima], [Shelby Tissue] and [Shelby Tissue's] lender and all of their agents and employees from and against all claims, damages, losses and expenses, including attorney's fees, arising out of, or resulting from, the performance of [VICC's] Work under this Subcontract, provided that any such claim, damage, loss, or expense (a) is attributable to bodily injury, sickness, disease, or death, or patent infringement, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of [VICC] or anyone directly or indirectly employed by [VICC] or anyone for whose acts [VICC] may be liable, or is caused by or arises out of the use of any products, material or equipment furnished by [VICC] regardless of whether it is caused in part by a party indemnified hereunder.

Titan answered Kajima's cross-claim and filed its own cross-claim for indemnity against VICC. Like Kajima's, Titan's cross-complaint sought an award of damages and attorney's fees against VICC, and Titan's requests for this relief closely mirrored the allegations of Kajima's cross-complaint. Titan attached to its cross-complaint a copy of its subcontract with VICC, which contained essentially the same indemnification clause found in Kajima's subcontract with VICC. In the same pleading containing its answer and cross-claim, Titan asserted a third-party claim against Monroe Meyerson, the principal shareholder of VICC's parent company, seeking damages and attorney's fees for Meyerson's alleged breach of a guaranty agreement executed in connection with the Shelby Tissue Project. Titan also attached a copy of the guaranty agreement to the pleading.

VICC filed an answer to Electric Controls' complaint in February 1993, before Kajima and Titan had filed their cross-claims against VICC.[1] After filing its answer in February 1993, however, VICC apparently chose not to participate further in this litigation.[2] VICC did not file an answer to either Kajima's or Titan's cross-claim.

In December 1993, Kajima filed a motion for default judgment against VICC based

upon VICC's failure to answer or respond to Kajima's cross-claim. Kajima's motion asked the court to

> enter a default judgment against [VICC], awarding Kajima the right to recover on its indemnity claim against [VICC] and on all other relief sought in the Cross-Claim by Kajima against [VICC], expressly reserving the amount to be awarded Kajima pending a determination of damages, if any, against Kajima.

In January 1994, the trial court entered an order granting Kajima's motion for default judgment against VICC. The trial court's order recited that

> [t]his matter came on to be heard on [Kajima's] Motion for Default Judgment against [VICC], and, it appearing to the Court that the motion is well taken and that [VICC] remains unrepresented in this cause,
>
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that [Kajima] be and hereby is awarded a default judgment against [VICC] as to [Kajima's] claims of indemnity and/or contribution. The damages to be assessed against [VICC] in favor of [Kajima] shall be ascertained after a hearing in this matter.

Over three years later, in March 1997, the principal parties to this litigation settled the bulk of their claims against one another, including (1) Shelby Tissue's cross-claim for breach of contract against Kajima and (2) Kajima's cross-claim for indemnity against Titan. The settlement agreement required Shelby Tissue and its construction lender to pay a specified sum to another defendant that is not a party to this appeal; however, the settlement did not require either Kajima or Titan to expend any funds. Apparently, the only claims not disposed of by the settlement agreement were Kajima's and Titan's cross-claims for indemnity against VICC.

On the day of the final settlement conference, Titan's attorney telephoned the attorney representing Meyerson and VICC and notified him that the trial against VICC would proceed at 2:00

that afternoon. During this conversation, Titan's attorney indicated that Titan was dismissing its third-party claim against Meyerson, but that Titan was "going to proceed to attempt to get a judgment for fees against [VICC]."

The record on appeal does not include a transcript of the 2:00 p.m. hearing on fees, but the parties appear to agree that VICC's attorney did not participate in the hearing. At the hearing's conclusion, the trial court entered a judgment awarding Titan the amount of $640,971. In a separate judgment, the trial court awarded Kajima its attorney's fees in the amount of $300,000.

On March 28, 1997, the trial court entered a consent order that dismissed all remaining claims in the lawsuit per the parties' settlement agreement. Thereafter, VICC filed a motion to alter or amend the judgment, which the trial court denied in October 1997. This appeal timely followed.

On appeal, VICC contends that the trial court erred in awarding attorney's fees to Kajima and Titan because this relief was not sought in their cross-complaints. VICC concedes that both cross-complaints requested attorney's fees; however, VICC points out that the requests for attorney's fees were expressly conditioned on a determination of liability or an award of damages against Kajima on Shelby Tissue's cross-claim for breach of contract. Inasmuch as the record contains no finding of liability on the part of Kajima, and inasmuch as the settlement agreement did not require Kajima to pay any damages, VICC insists that the cross-complaints cannot support the judgments for attorney's fees entered against VICC.

We agree that the judgments against VICC must be reversed. Rule 55.01 of the Tennessee Rules of Civil Procedure permits the trial court to enter a default judgment against a party who "has failed to plead or otherwise defend" against a claim for affirmative relief. T.R.C.P. 55.01. Under rule 54.03, however, a default judgment "shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." T.R.C.P. 54.03.

Rule 54.03 is consistent with prior case law holding that "a judgment or a decree which is beyond the fair scope of the pleadings is void." ***Brown v. Brown***, 281 S.W.2d 492, 497 (Tenn. 1955); *accord **Myers v. Wolf***, 34 S.W.2d 201, 203 (Tenn. 1931); ***Lieberman, Loveman & Cohn v. Knight***, 283 S.W. 450, 452 (Tenn. 1926); ***Phifer v. Mutual Benefit Health & Accident Ass'n***, 148 S.W.2d 17, 23 (Tenn. App. 1940). "[T]he rule is firmly established that irrespective of what may be proved a court cannot decree to any plaintiff more than he claims in his bill or other pleadings."[3] ***Fidelity-Phenix Fire Ins. Co. v. Jackson***, 181 S.W.2d 625, 629 (Tenn. 1944). In order to sustain a judgment, therefore, a plaintiff's complaint must contain sufficient allegations to support a finding of liability on the part of the defendant. *See **Lancaster Mills v. Merchants' Cotton-Press & Storage Co.***, 14 S.W. 317, 324 (Tenn. 1890). Moreover, the judgment cannot award relief that differs from the relief sought by the plaintiff's complaint or that is based upon a theory of liability that differs from that alleged in the complaint. ***Fidelity-Phenix Fire Ins. Co.***, 181 S.W.2d at 629; ***Lancaster Mills***, 14 S.W. at 324.

The policy underlying this rule is that, "since the purpose of pleadings is to give notice to all concerned regarding what may be adjudicated, a judgment beyond the scope of the pleadings is beyond the notice given the parties and thus should not be enforced." ***Brown***, 281 S.W.2d at 497. In discussing the rationale behind rule 54.03, our supreme court has explained that

> ". . . a party has a right to assume that the judgment following his default will not go beyond the issues presented by the complaint and the relief asked therein, and if a judgment other than that demanded is taken against him, he is deprived of his day in court . . . ." [***Cushman v. Cushman***, 3 Cal. Rptr. 24, 26 (Cal. Ct. App. 1960)].
>
> . . . .
>
> ". . . The theory of this provision is that once the defending party receives the original pleading he should be able to decide on the basis of the relief requested whether he wants to expend the time, effort, and

money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should he attempt to limit the scope and size of the potential judgment against him by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award. In a similar vein, unless all the parties in interest have appeared and voluntarily litigated an issue not within the pleadings, the court should consider only those issues presented in the pleadings. In sum, then, a default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded." Wright and Miller, *Federal Practice and Procedure* § 2263, at 99-100 (1973).

*Qualls v. Qualls*, 589 S.W.2d 906, 909-10 (Tenn. 1979); *accord Holder v. Drake*, 908 S.W.2d 393, 395 (Tenn. 1995); *Pittman v. Pittman*, No. 01A01-9301-CH-00014, 1994 WL 456348, at *4 (Tenn. App. Aug. 24, 1994) (*no perm. app. filed*); *Harris v. Harris*, No. 01A01-9101-PB-00017, 1991 WL 111434, at *2 (Tenn. App. June 26, 1991) (*no perm. app. filed*).

In the present case, both Kajima's and Titan's cross-claims requested an award of attorney's fees. Their demands for such relief, however, were expressly conditioned upon a determination of liability or an award of damages against Kajima on Shelby Tissue's cross-claim for breach of contract. In subparagraphs (a), (c), and (d), for example, their cross-claims requested an award of damages and attorney's fees "if" or "in the event" the allegations of Shelby Tissue's cross-claim against Kajima were "found" or "held to be true." Similarly, subparagraph (e) requested an award of damages and attorney's fees "[t]o the extent" that any "improper design and/or improper workmanship" was found to be "attributable to [VICC] and/or its subcontractors." Finally, subparagraph (f) requested an award of damages and attorney's fees "[t]o the extent [VICC] was obligated to perform a significant and substantial portion of the work on [the Project]," and the request for damages was expressly limited to the amount of "any judgment or award of damages against Kajima."

As revealed by the language of these subparagraphs, all of Kajima's and Titan's requests

for relief were conditioned upon the existence of one of three circumstances:  (1) a finding that the allegations of Shelby Tissue's cross-claim against Kajima were true; (2) a finding that improper design or workmanship was attributable to VICC or one of VICC's subcontractors; or (3) the entry of a judgment or an award of damages against Kajima.  The parties do not dispute the fact that none of these conditions occurred.  Accordingly, we conclude that the judgments for attorney's fees cannot stand because the judgments award relief that exceeds the scope of the relief sought by Kajima's and Titan's cross-claims.

By failing to answer or otherwise defend Kajima's and Titan's cross-claims, VICC took the risk that it would be required to pay damages and attorney's fees in the event that any of the foregoing conditions transpired.  In the absence of any of these conditions, however, it would be fundamentally unfair for the court to award attorney's fees to either Kajima or Titan because such an award is not supported by the allegations of their cross-complaints.

Citing *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336 (Tenn. 1985), Kajima and Titan insist that the trial court's awards of attorney's fees should be upheld on a theory of common-law indemnity, as opposed to contractual indemnity.  In *Pullman Standard*, our supreme court adopted "the majority view that attorneys' fees are recoverable under an implied indemnity agreement in appropriate cases." *Pullman Standard*, 693 S.W.2d at 338.  In adopting the majority view, the supreme court continued to adhere to the rule that "attorneys' fees are not recoverable in the absence of a statute or contract specifically providing for such recovery, or a recognized ground of equity." *Id*.  The court recognized an exception to this rule, however, and held that "the right of indemnity which arises by operation of law, based upon the relationship of the parties, . . . includes the right to recover attorneys' fees and other litigation costs which have been incurred by the indemnitee in litigation with a third party." *Id*. (citation omitted).  Relying on *Pullman Standard*, Kajima and Titan argue that "[w]hen only litigation expenses are sought it is not necessary that an indemnitee be forced to pay a judgment or settlement to a third party in order to recover such litigation expenses and attorneys'

fees from its indemnitor." *Pullman Standard*, 693 S.W.2d at 338.

We believe that Kajima's and Titan's reliance upon *Pullman Standard* is misplaced. Our review of Kajima's cross-claims for indemnity against Titan and VICC, and of Titan's cross-claim against VICC, reveals that these claims were based upon a theory of contractual indemnity, not common-law indemnity. Moreover, as we previously explained, the language of their cross-claims expressly conditioned Kajima's and Titan's rights to recover attorney's fees upon a finding of liability or an award of damages against Kajima. Kajima and Titan cannot now claim attorney's fees based upon a theory of liability not alleged in their cross-complaints.

In any event, we believe that Kajima's and Titan's interpretation of the *Pullman Standard* decision is incorrect. Kajima and Titan appear to interpret *Pullman Standard* to hold that they may recover their attorney's fees even in the absence of a finding of fault on the part of VICC. Kajima and Titan correctly cite the *Pullman Standard* decision for the proposition that an indemnitor may be required to pay its indemnitee's attorney's fees even when the indemnitee is not "forced to pay a judgment or settlement to a third party." *Pullman Standard*, 693 S.W.2d at 338. In rejecting the requirement of a judgment or settlement payment to a third party, the supreme court reasoned that "[s]uch a requirement would, . . . penalize a party for successfully defending the allegations against it." *Id*. (citation omitted).

Nevertheless, we do not interpret the supreme court's rejection of this requirement to mean that an indemnitee seeking an award of attorney's fees need not allege or prove some degree of fault on the part of the indemnitor. In *Pullman Standard*, the supreme court concluded that the plaintiff's complaint contained sufficient allegations to state a claim for attorney's fees under this theory. *Pullman Standard*, 693 S.W.2d at 338. The complaint alleged that the plaintiff, Pullman Standard, was required to defend itself in prior lawsuits because a wheel designed and manufactured by the

defendant, Abex Corporation, was defective and caused the damages complained of in those suits. *Id*. Accordingly, although the complaint did not allege that Pullman Standard was required to pay a judgment or settlement in the prior lawsuits, the complaint clearly alleged that Pullman Standard was required to defend the prior lawsuits due to the fault of Abex.

Moreover, in recognizing the right to recover attorney's fees under an implied indemnity agreement, the supreme court explained that this right

> is not based upon the failure of the indemnitor to fulfill an obligation to take over the indemnitee's defense or upon the existence of some benefit to the indemnitor arising from the defense conducted by the indemnitee. Instead, it is, like the right of the indemnitee to be indemnified for any judgment or settlement it pays, based upon the relationship between the parties *and their respective degrees of fault*.

*Pullman Standard*, 693 S.W.2d at 339 (emphasis added). Thus, the indemnitee's right to recover attorney's fees under this theory depends not upon the fact that the indemnitee was required to defend itself in a prior lawsuit, but that the indemnitee was forced to defend itself due to some fault or wrongdoing by the indemnitor. *Id*.

Alternatively, Kajima contends that VICC is now precluded from contesting its liability for attorney's fees based upon this court's decision in *Nickas v. Capadalis*, 954 S.W.2d 735 (Tenn. App. 1997). In *Nickas*, we explained that a default judgment may significantly limit a defendant's ability to litigate the substantive issues in a lawsuit:

> By permitting a default judgment to be entered against him, a defendant " impliedly confesses all of the material allegations of fact contained in [the] complaint, except the amount of the plaintiff's unliquidated damages." *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984). As a general rule, therefore, the defendant against whom a default judgment has been entered is thereafter precluded from litigating any substantive

issues in the lawsuit, except for the establishment of the amount of damages. *Witter v. Nesbit*, 878 S.W.2d 116, 119 (Tenn. App. 1993), *cert. denied*, 513 U.S. 873, 115 S. Ct. 199, 130 L. Ed. 2d 130 (1994). In accordance with this principle, appellate review of a default judgment or decree is "quite limited." 5 C.J.S. *Appeal & Error* § 718 (1993).

*Nickas*, 954 S.W.2d at 739. Citing this language, Kajima contends that, once the default judgment was entered against VICC, VICC thereafter was precluded from litigating Kajima's right to recover attorney's fees and could litigate only the issue of the amount of fees to be awarded.

Again, we conclude that Kajima's reliance upon the cited authority is misplaced. In accordance with our decision in *Nickas*, we agree that, by permitting default judgments to be entered against it, VICC impliedly confessed all of the material allegations of fact contained in Kajima's and Titan's cross-complaints.[4] *Nickas*, 954 S.W.2d at 739. The allegations of Kajima's and Titan's cross-claims, however, merely asserted that Kajima and Titan were entitled to their attorney's fees in the event of a determination of liability or an award of damages in Shelby Tissue's suit against Kajima. Inasmuch as Shelby Tissue's cross-claim against Kajima did not result in a finding of liability or an award of damages, we fail to see how VICC has impliedly confessed that Kajima and Titan are entitled to attorney's fees.

In *Nickas*, we recognized that a defendant may limit its ability to litigate the substantive issues of a lawsuit by allowing a default judgment to be entered against it. *Nickas*, 954 S.W.2d at 739. We also recognized, however, that this limitation does not preclude a defendant from later challenging the sufficiency of the complaint to sustain the judgment. *Id*. at 739-40. In the present case, VICC's appeal of the trial court's judgments is based primarily upon VICC's argument that the allegations of Kajima's and Titan's cross-complaints are insufficient to sustain the judgments for attorney's fees. *Nickas* expressly recognizes VICC's right to challenge the trial court's judgments on this basis.

Finally, we reject Titan's suggestion that its award of attorney's fees may be supported by the language of the guaranty agreement attached to Titan's complaint. In the guaranty agreement, which was executed by both Monroe Meyerson and a VICC representative, Meyerson and VICC agreed "to individually and personally guarantee payment of any and all fees, expenses, contract payments, or costs that may be incurred by Titan pursuant to Titan's contract with Kajima and/or Titan's sub-subcontract with VICC." We conclude that Titan may not rely upon this guaranty language to support its claim for attorney's fees because Titan's cross-claim for indemnity against VICC did not reference the guaranty. Titan's cross-claim cited the subcontract between Titan and VICC, but it did not cite the guaranty agreement executed by VICC and Meyerson. Titan attached the guaranty agreement to its pleading to support its third-party complaint against Monroe Meyerson. Titan did not file a claim against VICC based upon the provisions of the guaranty agreement.

In sum, we hold that the trial court's judgments for attorney's fees cannot be sustained because the judgments award relief that exceeds the scope of the relief requested in Kajima's and Titan's cross-claims. In light of this holding, we pretermit any remaining issues raised by the parties' briefs.

The trial court's judgments are reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Kajima and Titan, for which execution may issue if necessary.

_____

FARMER, J.

_____

HIGHERS, J. (Concurs)

LILLARD, J. (Not Participating)