Bonnie REECE

v.

**Linda ELLIOTT and Diane Dempsy, Individually and as Co–Executrixes of the Estate of Eugene Reece.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Assigned on Briefs, May 23, 2006.

June 28, 2006.

Permission to Appeal Denied by Supreme Court Nov. 20, 2006.

B.J. Reed, Knoxville, Tennessee, for appellant.

Johnny V. Dunaway, LaFollette, Tennessee, for appellees.

## OPINION

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Plaintiff's Declaratory Judgment suit to declare the antenuptial agreement invalid was dismissed by the Trial Court which held the agreement enforceable. On appeal, we affirm.

Plaintiff, widow of Eugene Reece, filed this declaratory judgment action against Linda Elliott and Diane Dempsey, Individually and as Co–Executrixes of the Estate of Eugene Reece.

Plaintiff stated that she was the surviving widow of Eugene Reece, that they had married on December 4, 1999, and Reece died intestate on July 5, 2003. Contemporaneously with the filing of this action, plaintiff applied for statutory benefits as surviving widow and attached a copy of the antenuptial agreement dated November 29, 1999. She sought a declaration regarding the rights and liabilities of the parties, and also sought rescission of the document based upon her late husband's failure to make a full disclosure regarding his assets and financial condition.

The Agreement attached states that Mr. Reece and petitioner had an interest in real and personal property identified in the attached lists, and that the property listed would be considered the separate property of each. The document further states that each party had children of prior marriages, and that each party desired to provide for his/her children from previous marriages by maintaining separate property and relinquishing marital property rights in the other's property. The document also states that each party recognized his/her right to dissent from the will of the other, and that each party waived that right as to said separate property. The parties affirmed in the document they had each consulted with and had the opportunity to consult with counsel, that they understood the full import of the document, and that a full disclosure of assets had been made.

Exhibit A to the document lists the separate property of Mr. Reece, and includes a residence in Ohio, its contents, and three vacant lots there. It also includes 230 acres in Morgan County, 1687 shares of JH Routh Packing Company stock, a promissory note due from Routh, various automobiles and equipment, a brokerage account at Fidelity, bank accounts at Citizens Bank in Tennessee and Ohio, and school bonds. Exhibit B is a list of separate property of petitioner, and it lists a residence in Knoxville and the contents thereof, a Grand Cherokee Laredo, a brokerage account at First Tennessee, an IRA, U.S. savings bonds, and a savings account and CD at First Tennessee. Values are not listed for every item.

In the defendants' Answer, they relied on the antenuptial agreement, and the defenses of estoppel, laches, release and waiver. During the trial, plaintiff testified that attorney James Brooks prepared the antenuptial agreement and she only met him when she picked it up. She testified that she consulted with an attorney, Debra Graham, who read over the document. She testified that the list of her property was prepared by her and then taken to Mr. Brooks to be typed up and attached to the agreement. She testified that Mr. Reece told her he had worked as a truck driver for Routh Packing Company, and he owned stock in the company. She testified

the agreement set forth a number of shares of stock and that when she read the agreement, she saw his list of property, and saw that Routh Packing owed him $357,000.00. She testified that she fully understood those items would not belong to her in the event of his death, and that she would have no interest in his separate property. She went over the appropriate list with her attorney and did not have any questions. She signed the agreement in the attorney's office, and the attorney's staff notarized her signature.

She further testified that she was not aware of any items of property that Reece failed to disclose, and that it did not matter if Reece owned 87 shares of stock or 1,687 shares, they were his. She said she did not know what she would have done if she had known the stock was worth a lot of money. She acknowledged that she did not discuss with her attorney the need to find out what the stock was worth, and that she did not know what the stock was worth in 1999. She elaborated that when she met with her attorney she did not consider having the attorney find out what the husband's value in Routh Packing was, because it was not a consideration, and that she did not disclose the values of her property on her list, but she told him what they were worth. She acknowledged that she did not ask Reece what the stock was worth because it was not important to her at the time because he was going to keep it anyway.

Following trial, the Trial Court stated that it was obvious from looking at Mr. Reece's list of property that he was a wealthy man, without taking into account the value of the stock, and that in the Court's opinion, the lack of value stated on the stock was not fatal to the agreement. The Court reiterated that the parties had entered into the agreement knowingly, they each had their own attorney, and that

everything was revealed on the list and the wife could have investigated any items that she wanted to. He noted that nothing was hidden, and the wife herself did not put values on several of her assets, admitting that it was not important, because they both agreed the assets would go to their respective children. The Court found that the law required each party to have a clear idea of the nature and extent of the other's assets, which the Court found to be the case, and entered Judgment, finding the antenuptial agreement was valid and enforceable and dismissed plaintiff's action.

 Defendants then filed a Motion for Discretionary Costs, which was granted, and a Motion to Set Attorney Fees. The Court denied the request for reimbursement of attorney's fees on the theory of indemnity, and the parties have appealed raising these issues:

1. Whether failure to disclose the value of the stock would render the antenuptial agreement invalid and unenforceable?
2. Whether the Trial Court erred in failing to award attorney's fees to defendants in defending the attack on the antenuptial agreement?

Prenuptial/antenuptial agreements are favored by public policy in Tennessee, and will be upheld so long as the parties enter into the agreements voluntarily and knowledgeably. *Wilson v. Moore*, 929 S.W.2d 367 (Tenn.Ct.App.1996). Tenn.Code Ann. § 36–3–501 deals with antenuptial or prenuptial agreements, and states:

Notwithstanding any other provision of law to the contrary, except as provided in § 36–3–502, any antenuptial or prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage that is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is deter-

mined, in the discretion of such court, to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. The terms of such agreement shall be enforceable by all remedies available for enforcement of contract terms.

Plaintiff's sole argument is that she did not enter into the agreement with full knowledge of the value of the deceased's assets, because there was no value disclosed regarding the stock in Routh Packing Company.

In the case of *Randolph v. Randolph*, 937 S.W.2d 815 (Tenn.1996), the Supreme Court interpreted the term "knowledgeably" as meaning that the proponent of the agreement had to prove that a full and fair disclosure of the nature, extent and value of the party's holdings was provided, or that such disclosure was unnecessary because the spouse had independent knowledge of the same. The Court said:

> The extent of what constitutes "full and fair" disclosure varies from case to case depending upon a number of factors, including the relative sophistication of the parties, the apparent fairness or unfairness of the substantive terms of the agreement, and any other circumstance unique to the litigants and their specific situation. While disclosure need not reveal precisely every asset owned by an individual spouse, at a minimum, full and fair disclosure requires that each contracting party be given a clear idea of the nature, extent and value of the other party's property and resources. Though not required, a fairly simple and effective method of proving disclosure is to attach a net worth schedule of assets, liabilities and income to the agreement itself.

*Id.* at 821.

The Court also noted that while it was not required, representation by independent counsel was also a factor to take into account, and possibly the "best evidence that a party has entered into a antenuptial agreement voluntarily and knowledgeably." *Id.* at 822.

The Court made clear that specific appraisals were not a necessity, but rather, it was general knowledge of the party's overall net worth that was needed. *Id.* The Court ultimately held the Prenuptial agreement in that case invalid, finding the husband had not made a full disclosure of his property holdings, that he was a "learned businessman very shrewd in his dealings", and the wife had no prior business knowledge, that she was presented with the agreement one day before the marriage at a time when she was in ill health, and she had no opportunity to study it or seek advice from counsel. *Id.*

In cases where antenuptial agreements have been enforced, we have made clear that the basic question which must be answered is whether the spouse was misled, where the proponent of the agreement makes a fair disclosure, even if it not 100% exhaustive, and the spouse had the opportunity to ask questions and discover the extent of the other's holdings but failed to do so due to lack of interest, then the agreement has been held valid. *See, e.g., Cantrell v. Estate of Cantrell,* 19 S.W.3d 842 (Tenn.Ct.App.1999); *Wilson v. Moore,* 929 S.W.2d 367 (Tenn.Ct.App.1996); *Kahn v. Kahn,* 756 S.W.2d 685 (Tenn.1988). *Also see, Spurlock v. Brown,* 91 Tenn. 241, 18 S.W. 868 (1892).

Here plaintiff had full knowledge that her husband was a man of wealth, as shown by the list of assets that was provided. The fact that there was no value listed for one particular asset, even though it was significant, would not invalidate the agreement that she entered freely. She consulted with independent counsel and admitted

to clearly understanding what the agreement meant, and that she would have no claim to any of these assets. She had the opportunity to ask questions about the assets, and did not have her counsel investigate, stating that it "did not matter" because she knew the assets would not be hers. She admitted that her husband was never dishonest with her, and was very straightforward and open with her about his financial dealings and never misled her. The disclosure in the agreement demonstrates the husband's wealth, and the wife did not avail herself of the opportunity to ask him the value of the stock, nor make any independent investigation. We agree with the Trial Court that the wife was not misled, and under these circumstances, we agree with the Trial Court that the agreement entered is binding and enforceable on plaintiff.

██ Defendants contend that the Trial Court erred in refusing to award them attorney's fees based on an indemnity theory, citing *Pullman Standard, Inc., v. Abex Corp.*, 693 S.W.2d 336 (Tenn.1985). In that case the Supreme Court said:

> We continue to adhere to the rule in Tennessee that attorney's fees are not recoverable in the absence of a statute or contract specifically providing for such recovery, or a recognized ground of equity; however, we recognize an exception to that rule and hold that the right of indemnity which arises by operation of law, based upon the relationship of the parties, includes the rights to recover attorneys' fees and other litigation costs which have been incurred by the indemnitee in litigation with a third party.

This very limited allowance was further explained in *Electric Controls v. Ponderosa Fibres of America*, 19 S.W.3d 222 (Tenn.Ct.App.1999):

> in recognizing the right to recover attorney's fees under an implied indemnity agreement, the supreme court explained that this right is not based upon the failure of the indemnitor to fulfill an obligation to take over the indemnitee's defense or upon the existence of some benefit to the indemnitor arising from the defense conducted by the indemnitee. Instead, it is, like the right of the indemnitee to be indemnified for any judgment or settlement it pays, based upon the relationship between the parties and their respective degrees of fault. Thus, the indemnitee's right to recover attorney's fees under this theory depends not upon the fact that the indemnitee was required to defend itself in a prior lawsuit, but that the indemnitee was forced to defend itself due to some fault or wrongdoing by the indemnitor. *Id.*

The facts of this case do not fall within this recognized exception and the Trial Court properly denied the defendants' request for fees. As the Supreme Court recognized "most jurisdictions that have considered the issue have adhered to the well-established American rule, which proves that attorney's fees may not be awarded to the prevailing party absent statutory authorization or an agreement between the parties so providing.... Tennessee courts have long adhered to the American rule, concluding that an award of attorney's fees as part of the prevailing party's damages is contrary to public policy." *John Kohl & Co., P.C., v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn.1998). The Trial Court's ruling on this issue is affirmed.

The Trial Court's Judgment is affirmed and the cost of the appeal is assessed one-half to Bonnie Reece, and one-half to Linda Elliott and Diane Dempsy.