PARK v. SINCLAIR REFINING CO. et al.—142 S. W. (2d) 321.

Eastern Section.   January 1, 1940.

Petition for Certiorari Denied by Supreme Court, June 29, 1940.

J. R. King, of Morristown, and Phillips & Hale, of Rogersville, for plaintiff in error.

Rankin & Hale, of Jefferson City, Susong, Parvin & Fraker, of Greeneville, and McCanless & Taylor, of Morristown, for defendants in error.

PORTRUM, J.   This is the last chapter of the career of Mr. J. Frank Park, age sixty-four, a distinguished lawyer of the Jefferson County Bar, and of this Bar, an estimable gentleman, highly esteemed by the public and loved by his friends and associates.   He died tragically during an interruption of his work and with his boots on. The court regrets to write the chapter with a disappointing ending.

His widow instituted this suit as his administratrix and sues the defendants for maintaining a nuisance upon the property in which each had an interest by the creation and maintenance of a pitfall

endangering the life and limb of invitees upon the premises, and each of the succeeding sublessors and the lessee in possession is named and sued for the same cause. Mr. Park, in the nighttime, fell in the grease pit constructed upon the property which was utilized in the greasing of automobiles. The walls of this grease pit were constructed of concrete and made so as to come to a point within a few inches of the floor adjacent to the crushed rock driveway, which driveway was being used as a walkway by the public and a place for parking cars by patrons using a filling station adjacent, or the shed covering the pit which space within the shed was used for storing, washing, oiling and repairing automobiles. This gravel parking space upon which the public walked, there being no sidewalk, extended from a paved street to the building line upon this lot in Jefferson City, Tennessee, and was a width of 17 feet from the pavement to the building line, and was private property of the defendants, with the exception of the shoulder to the highway, a strip of about 6 feet.

The defendants had constructed and maintained a filling station, in which was located a restaurant, on the east corner of this lot, and to the west of this filling station and under the same roof was this shed, which was used in connection with the filling station. And adjoining this shed on the west was a large brick building with three storerooms. Across the space in front of these buildings was this gravel space, which was a continution of the paved highway up to the building line and while upon private property it was being used for street purposes and as a parking space for the customers of the respective businesses. The filling station maintained a shed or covered driveway from the front of the building occupied by the station and restaurant upon a portion of this space, in order that cars could be serviced with gasoline from either side of the gasoline pumps located in front of the building, as is the ordinary case. A photograph is in the record which more clearly conveys a description of the premises.

Mr. Park had his law office about 150 feet to the west of this property and the restaurant, and he was in the habit of working at night, and he would quit his work and go down the street to this restaurant for refreshments. He did this quite often and was familiar with the premises.

On the night of May 19, 1937, an automobile driven by a Mr. Bishop, accompanied by a Miss Noe, drove upon this gravel space and parked the car immediately in front of this grease pit, and only a distance of 18 to 20 inches away from the grease pit; and after having so parked another car driven by Mr. McDaniel drove to the rear and left of the Bishop car and parked his car in an oblique position with the line of the street in a method so that the rear of the McDaniel car was to the rear of the Bishop car blocking it in

its exit. After some interval of time, Mr. Bishop desired to back out and take Miss Noe to her home, but to do so he had to request Mr. McDaniel to move his car from the rear of the Bishop car and Mr. McDaniel went to his car to comply with the request. Bishop and Miss Noe were in the Bishop car, and Mr. McDaniel was in the act of getting in or within his car when Mr. Bishop and Miss Noe first saw Mr. Park coming across the gravel space towards their car, and while he was in front of the brick building above referred to; he had his hand or his hands in his pockets and was whistling as he came. The lights of these parked cars were not burning. When Mr. Park passed the brick building he was confronted with the two parked automobiles immediately in front of him and he turned to his left and towards the building to pass in front of these cars on his way to the restaurant. When he was in front of the McDaniel car, McDaniel was preparing to start his car, and the front of his car was about 4 or 5 feet from the front of the Bishop car. Bishop turned his head to watch McDaniel and did not see Mr. Park come in front of his car but Miss Noe did; McDaniel started up his car and at the time or about the time Miss Noe saw Mr. Park fall in the pit. She called Mr. Bishop's attention to the fact that someone had fallen in the pit and he got out of the car and went around and looked in the pit but it was dark, and he heard someone whistling in the kitchen and thought that Mr. Park had gone in there whistling, so he came back and drove away. Later he returned to the filling station and Mr. Park had been discovered in the pit and was unconscious; he was removed to a hospital where he died a short time thereafter, never regaining consciousness.

Upon this state of facts the plaintiff bases her cause of action. The allegations of the declaration being material in the determination of the suit, we quote at length, omitting non-essential parts for brevity. The first paragraph of the declaration is a description of the property and is omitted; the second reads:

"On the east end of said premises, at such time, was a building used for filling station and restaurant. Immediately to the west of such building and on said premises, is an open space, under a shed, for the storing, washing, oiling and repairing of automobiles. At this point there was maintained by defendants, jointly or separately, a pit or hole about 10 feet in length, three feet in width, and six feet in depth. On the west side of said room so used for a restaurant, is a door for the use of customers and patrons of said restaurant and filling station to enter said building, and who were invited by the defendants so owning, operating, and maintaining same to enter upon said premises and the rooms aforesaid for the purpose of negotiating sales and purchasing food, drinks, gasoline, etc., and the said defendants owe such invitees the positive duty of maintaining said premises in a reasonably safe condition for their entry thereon.

"On said date aforesaid, said J. Frank Park, the plaintiff's intestate, entered upon said premises for the purpose of going into said room to purchase such commodities from such defendants, pursuant to the invitation so extended to the public generally, and for the mutual benefit of the parties. *This was at night. The aforesaid pit or hole was hidden by darkness and shadow. No light was maintained to show it.* No top or cover was thereon, and no guard around it. And it constituted a veritable pitfall or trap for those expecting to enter said rooms from the west side by the door aforesaid, being in line with the said door to any person approaching same from the south, and being where said invitees were likely to use in approaching said door. While so entering or attempting to enter said room, under the invitation and for the purpose aforesaid, the said J. Frank Park stepped into said pit or hole, was thrown violently down therein, causing his head and body to strike the sides and parts thereof with great violence, causing great and severe injury to him, from the effects of which, after much pain and anguish, he died, on May 20, 1937. The said intestate was sixty-four years of age; an attorney at law, with large and lucrative practice in Jefferson County and other counties in East Tennessee.

"The defendants maintained said pit or hole with full knowledge of its dangerous condition, other persons having theretofore fallen therein, which was known to the defendants.

"The defendants were guilty of negligence in maintaining said open and *unlighted pit,* unprotected by guards, and such negligence was the prime and proximate cause of the aforesaid injury and death of the intestate."

At a later term the second count was added to the declaration by an amendment, which reads as follows:

"The allegations of count one with respect to the matters therein contained except as to those which are inconsistent with the matters therein set forth, are reiterated; and it is further averred that the buildings on said premises were at such time open for business and the sale of food, drinks, gas, oil, etc., and the public invited to enter thereon. The space between said building, south of it to the highway, a distance of about 15 to 20 feet was filled in to ground level, then covered with gravel so as to be fit for use by the public in walking and driving thereon, and the public was invited to use same in said manner.

"The aforesaid pit or opening set forth in count one was built within a few inches of the south end of said space so filled in and used as aforesaid, and constituted a trap or pitfall for any passerby, who might inadvertently step from said rockway—a single misstep being sufficient to precipitate the passerby into said pit or hole.

"At the time and place aforesaid the said Frank Park, being so invited on the said premises, was passing along the south side of

the house on said premises in the nighttime and while said pit was maintained open and without guard, while he was so passing the said Frank Park did inadvertently and without negligence on his part, fall into said pit whereby he was killed, to plaintiff's damages as aforesaid, for which he sues." (The italics in the above quotation are ours.)

All of the defendants plead not guilty to the declaration, and the lessee in possession filed an additional plea as follows: "As to both the first and second counts, that plaintiff, himself, was thoroughly familiar with the premises, knew the existence of the grease pit, its location, and passed along by the place day after day over a period of years, and with full knowledge of such condition, he, himself, was guilty of carelessness and negligence in walking into it on the date of his injury, and that his own negligence and careless conduct was the proximate cause of his injury and death."

The plaintiff introduced her proof and from which it appears that Mr. Park was familiar with the premises and had passed this way both day and night for a number of years; and it was further shown that the premises were lighted from electric lights at the filling station, in the usual and customary way, which lights illuminated the driveway.

At the conclusion of the plaintiff's testimony the defendants made a motion for a directed verdict upon several grounds, the principle of which was that there was no evidence to support the verdict and that the deceased, Park, was guilty of contributory negligence, barring a recovery. The trial judge sustained the motion upon the gound that Mr. Park was familiar with the premises, entering upon them and traversing them with full knowledge of the pitfall and the care required to pass between the front of a parked car and the pit, and that he was guilty of contributory negligence in undertaking to pass. He applied the rule announced in the case of Clapp v. LaGrill, 103 Tenn., 164, 52 S. W., 134, referring to the case as follows: "In that case, LaGrill knew of the dangerous place over which he walked" (just as the plaintiff's intestate in this case knew), "and which broke through and precipitated him into the cellar below and injured him. He had seen it, known of it, traveled over it a great many times, and of course when he walked over it and got hurt he knew of the risk he was taking in doing so."

From the case as made by the plaintiff, based upon her declaration and the proof, the court cannot escape from the conclusion that the trial judge correctly ruled upon the motion. Conceding the negligence of the defendants, and that the plaintiff's intestate was an invitee, the case as made by the plaintiff established the rule sometimes called "the assumption of the risk" or an "incurred risk." And the fact that the injured party was an invitee upon the premises affords no escape from the rule.

"It is unnecessary to cite authority for the proposition that mere ownership or occupancy of premises . . . does not render one liable for injuries to persons entering them; the owner is not an insurer, even when the visitor is an invitee. Liability is grounded on the superior knowledge of the owner of the danger to the invitee. It is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted. In the language of Mr. Justice Harlan, the owner is liable to his invitees for injuries 'occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who•were likely to act upon such invitation.' Bennett v. Louisville & Nashville Railroad Co., 102 U. S., 577, 580, 26 L. Ed., 235. We quote this pertinent language from 20 R. C. L., p. 57, citing cases: 'It has been said that the phrase "implied invitation" in its real meaning and significance, as derived from its application to the adjudged cases, imports knowledge by the defendant of the probable use by the plaintiff of the defendant's property so situated and conditioned as to be open to, and likely to be subjected to, such use. And, hence, there is no liability from dangers that are obvious, or as well known to the person injured as to the owner.' And, again, on page 107 of the same text book, it is said: 'In more familiar form the proposition is as follows: Liability is established when it is shown that the peril, being of the defendant's creation, was known to the defendant, but not to the person injured; and no liability is predicable of the injury when it appears that the injured person's knowledge of the danger surpassed or equaled that of the defendant.'" Illinois Central Ry. Co. v. Nichols, 173 Tenn., 602, 118 S. W. (2d), 213, 217.

And this rule applies with full rigor when the injured person enters into a dark place known by him to be dangerous. The rule was applied by this court in the case of Leow's, Nashville & Knoxville Corporation v. Durrett, 18 Tenn. App., 489, 79 S. W. (2d) 598. There a lady attempted to walk down the darkened aisle of a theatre in search of a seat, knowing a flight of steps was in the aisle and without waiting for an usher. She fell down the steps and was injured. The case was dismissed upon the principle of assumed or incurred risk, and the doctrine, as applied, is supported by many cases from other jurisdictions. It is held that entering a dark room where a trap door leading into a cellar is liable to be open, without using the means at hand to ascertain whether the trap door is open or shut is negligence. Swanson v. Brewing Co., 215 Ill. App., 185. Passing out of a store over a slippery, sloppy, tile entrance. Mullen v. Sensenbrenner Mercantile Co. (Mo. Sup.), 260 S. W., 982, 33 A. L. R., 176. Attempting to go through unlighted cellar known to be in a dangerous condition. Saunders v. Smith Realty Co., 84

N. J. L., 276, 86 A., 404. Stepping into an elevator shaft without ascertaining whether the elevator was there. Globe Indemnity Co. v. Hook, 46 Cal. App., 700, 189 P., 797. Using an unlighted stairway. Geninazzi v. Leonori (Mo. App.), 223 S. W., 75. In the case of Central Publishing House, etc., v. Flury, 25 Ohio App., 214, 157 N. E., 794, 798, it is said: "Darkness is nature's own warning to arouse the natural instinct of self-protection, the first law of nature. Indifference to such an instinct is a clear violation of a fundamental physical law, and should be, under circumstances like those of the instant case, more impressive and convincing than a sign .'Danger,' nailed on the door. Darkness was a danger in the instant case that stood gaunt and menacing in front of the eyes of the plaintiff, and under such circumstances as appear in this record to enter the shaft is, in our judgment, such contributory negligence as should prevent a recovery in law. To hold a contrary doctrine would be to declare that in times and places of danger a person is not responsible for the proper use of his faculties, and so to decide would be to say that one is not held to the exercise of reasonable care and prudence."

The case of Standard Oil Co. v. Meissner, 102 Ind. App., 552, 200 N. E., 445, is a case similar in facts to the instant case. There a lady walked around an obstruction on the street, trying to pass between it and an oil pit on private property, knowing of the existence and position of the pit, groping her way in the darkness, when she fell in the pit. The court held that she incurred the risk (Negligence, 45 C. J., Sec. 600, page 1043), and was not entitled to recover. See also Baker v. Railroad, 106 Tenn., 490, 61 S. W., 1029, 53 L. R. A., 474.

The allegations of the declaration bring this case directly within the rule announced in the foregoing cases. But in this court the plaintiff-in-error advances another theory, and seeks to escape the rule above announced, and applied by the trial judge, upon the basis of certain facts appearing in the record. It is here insisted that the deceased was well aware of the dangers encountered and that he assumed the risk, that his pathway was sufficiently lighted, and with the exercise of due care he would have incurred no injury, and was able to pass by the danger without mishap, but while in the exercise of due care and caution and while traversing the narrow path the sudden starting of the automobile, which he could not anticipate, startled him, causing him to jump or lunge away from the noise, and as a result he fell into the pit without fault on his part. These concessions are made in the brief: "We concede that Mr. Park knew of the presence of this pit, he had passed by it many times, and the presumption would be that he had seen it."

And again the brief concedes: "There is evidence that some of the lights on the filling station were burning, and that the light

in the kitchen was burning, all of which to some extent illuminated the place where the pit was. We concede that the evidence shows there was sufficient illumination around the filling station and from the kitchen to reveal the pit to Mr. Park. We have heretofore conceded that he knew about the pit being there, and we now concede that while there was no direct light on or over the pit, yet there was sufficient indirect light to reveal it to him. We may go further and concede that he actually saw and observed the pit as he approached it and was fully conscious of its presence. We believe that it is a fair inference that he did see and observed it as he approached it. . . ."

And there is evidence from which the jury might have drawn a logical inference that Mr. Park was using due care, there being a presumption of law to this effect, it being conceded that the property was lighted, and that he was startled by the starting of the car, and as a result he involuntarily stumbled or sprung into the pit.

Miss Noe testified that she was in the Bishop car and that it was directly in front of the pit, and the bumper was about 18 inches or 2 feet from the pit. She saw Mr. Park coming with his hand in his pocket, whistling, and was asked:

"Q. Did you continue to observe him until he fell? A. Yes.

"Q. Was Mr. McDaniel's car silent at that time or was the motor running? A. He started the car up just about the time that Mr. Park got up to the pit.

"Q. When Mr. Park got to the pit Mr. McDaniel started his motor? A. Yes.

"Q. What sort of noise did his motor make? A. I don't remember what kind of car he had, but I heard it.

"Q. You heard it make a noise? A. Yes.

"Q. That was just when Mr. Park passed it? A. Yes.

"Q. He was at the pit? A. Yes.

"Q. Did you see Mr. Park fall? A. Yes."

From this evidence it is insisted that the starting of the car was an unanticipated and independent cause concerned with the negligent conduct of the defendant, which was the proximate cause of the injury, and for which Mr. Park was in no way responsible. And that he did not assume this unknown risk and unusual and unanticipated risk at the time he was passing. Therefore, he was not guilty of contributory negligence, or at least, it is a question for the jury to determine. That the existence of the pit was the proximate negligent cause and the fact that he walked along the narrow passage, where he could walk with due care and caution, and was walking using due care, is not a contributing nor an act of negligence.

Many cases are cited in support of this theory or cause of action, and an able brief is filed in support of the theory, but the

difficulty confronting the court is that the cause of action now relied upon is not the cause of action alleged in the declaration. It is an inconsistent cause of action; there is nothing in the declaration giving the least notice of this; the language of the declaration cannot be construed as giving an implied notice, and if it did we concede it is in direct contradiction to the phrase in the declaration. The defendants were not aware of this theory for they did not attempt to cross examine the plaintiff's witnesses to determine if the starting car startled the deceased. And notwithstanding Miss Noe saw him fall, she was not asked by the plaintiff if he appeared to have been startled when he fell. We must conclude that the theory advanced here was not the predicate of the cause of action advanced in the lower court. The trial judge in his ruling upon the motion, covering several pages of transcript, made no reference to this theory.

". . . and another burden imposed on the plaintiff is that his proof must in substance correspond with the averments of his pleadings." Memphis Street Ry. Co. v. Cavell, 135 Tenn., 462, 467, 187 S. W., 179, 180, Ann. Cas., 1918C, 42.

It is a fundamental principle that the proof must correspond with the allegations in the pleadings. East Tenn., etc., Ry. Co. v. Collins, 85 Tenn., 227, 1 S. W., 883; East Tenn. Coal Co. v. Daniel, 100 Tenn., 65, 42 S. W., 1062; East Tenn., etc., Ry. Co. v. Lindamood, 111 Tenn., 457, 78 S. W., 99; Foster v. Jackson, 8 Baxt. [433], 434.

In the last named case the court said "While technical forms and pleadings are not now required still the parties should be confined to the case made in the pleadings. The proof should correspond with the allegations. The parties ought not to be allowed to charge one case in their pleadings and prove a case substantially different. . . ."

And litigants must be consistent in the position taken in litigation. And, further, the case must be tried in the Appellate Court upon the pleadings and proof heard and determined in the lower court. The court cannot discover, nor does it know of any principle justifying a reversal and remand of this case. Affirmed.

Ailor and McAmis, JJ., concur.