| | | |
|---|---|---|
| FREDRIKA A. STEINER, | ) | |
| | ) | **Davidson Circuit** |
| Plaintiff/Appellant, | ) | No. 94C-2468 |
| | ) | |
| VS. | ) | |
| | ) | |
| THE PARMAN CORPORATION, | ) | |
| | ) | **Appeal No.** |
| Defendant/Appellee. | ) | 01-A-01-9705-CV-00233 |

**FILED**

**December 5, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

HONORABLE WALTER C. KURTZ, JUDGE

Ben C. Fordham, #6408
HARWELL HOWARD HYNE GABBERT & MANNER, P.C.
1800 First American Center
315 Deaderick Street
Nashville, TN 37238
ATTORNEY FOR PLAINTIFF/APPELLANT

Glen L. Krause, #12691
BREWER, KRAUSE, BROOKS & MILLS
Suite 2600, The Tower
611 Commerce Street
Nashville, TN 37203
ATTORNEY FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED.

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
WALTER W. BUSSART, JUDGE

CONCUR IN SEPARATE IN OPINION
BEN H. CANTRELL, JUDGE

| FREDRIKA A. STEINER, | ) | |
|---|---|---|
| | ) | **Davidson Circuit** |
| Plaintiff/Appellant, | ) | **No. 94C-2468** |
| | ) | |
| VS. | ) | |
| | ) | |
| THE PARMAN CORPORATION, | ) | |
| | ) | **Appeal No.** |
| Defendant/Appellee. | ) | **01-A-01-9705-CV-00233** |

# **O P I N I O N**

The plaintiff, Fredrika A. Steiner, has appealed from the summary dismissal of her suit against the defendant, The Parman Corporation, for damages for personal injury sustained in a fall on the premises of defendant.

Plaintiff's injuries occurred on premises occupied, controlled and used by the defendant as a combination convenience store and gasoline station. The purpose of plaintiff's presence on the premises was to use one of the public telephones on the premises. The first telephone she approached was in use, so she went to and used a second telephone. During her walk from the second telephone to her vehicle, her foot struck an irregularity in the pavement, and she fell. The precise location of her fall and the location and nature of the alleged defect in the pavement are not clearly shown by the testimony. Exhibits A, B & C to the record are pictures of the scene and are made exhibits to this opinion.

From said pictures of the scene, this Court has drawn an unscaled plan of the area which is exhibit D to this opinion. The parking area and vehicle driveways are asphalt except for a concrete area of driveway extending from the store out to the pump island.

The testimony of plaintiff as to conditions at the place of her fall includes the following:

> Q.     You believe that you parked in an area the day you arrived at the market which would have placed you to the rear of the red truck we see in this photograph Exhibit Number 3?
>
> A.     Yes, sir.

Q.     And you would have walked towards the market in the area between these two trucks, correct?

A.     Right.

Q.     All right.  You would have walked on this higher surface, this concrete surface, correct?

A.     Uh-huh.

- - - -

Q.     You stepped down onto the lower asphalt surface that you were depicting in this photograph; is that correct?

A.     Yes.

- - - -

Q.     And to go in the door to the market you would have had to again stepped from the lower asphalt to the higher concrete that we see here where the word "no parking" is painted; is that correct?

A.     Yes.

- - - -

Q.     All right.  Did you buy anything in the market?

A.     No.

- - - -

Q.     All right.  You were looking for directions?

A.     Yes.

- - - -

Q.     You decided you weren't going to wait in the long line to get directions nor were you going to butt line and get directions, so you went back outside to use the phone; is that correct?

A.     Yes.

- - - -

I came out this door (indicating) and I came around and I went to this phone (indicating).  I didn't go to the front pay phone.

Q.     You went to the phone that is shown in Exhibit Number 1?

- - - -

A.     To this phone (indicating).

Q.     That is shown in Exhibit Number 1?

- - - -

Is that correct?

A.     Yes.

- - - -

Q.     Okay.  Now, you had talked to him, you hang up.  Did you make any other phone calls?

A.      No.

Q.      Then where did you go?

A.      I was walking back to my car.

Q.Now, let's use our Exhibit Numbers 1 and 3 here because I want to follow your path of travel.  You're at the phone on the far left of Exhibit Number 1.  Your car is parked, we've decided, approximately behind what would have been the red truck we see on the left of Exhibit Number 3?

A.Correct.

Q.Okay.  So you have to leave the sidewalk at some point in travel to get from the phone to your car, do you not?

A.      Yes, sir.

- - - -

As I said, there were other people out there on the sidewalk and I was walking directly back to my car to avoid, you know, being in anyone's way.

Q.      Okay.  So you stepped off the sidewalk in the vicinity of the phone you were using?

- - - -

When you're heading back towards your car before you stumble and fall, the area that in these photographs has no parking painted on it would have been to your left?

A.      Yes, sir.

Q.      And you would have been traveling parallel to that area?

A.      Yes.

Q.      All right.  And you were going to cross this -- Mr. Hamilton called it a lip.  I think he also called it a ridge. What do you want to call that?  I'll call it whatever you want.

A.      A step-down.

Q.      Okay.  You would have been approaching this step-down at a 90-degree angle; is that correct?

A.      No.  At that point I would have been going straight on.

Q.      Okay.

A.      Because when I hit my foot -- I stubbed my toe straight on and that's what cause me to fall.

From the exhibits and foregoing testimony of plaintiff, it is clear that she fell at or near a line where asphalt joins concrete and where the asphalt is measurably and visibly lower than the concrete; that she had walked across the same line a few minutes prior to the fall; and that where plaintiff thinks she fell, the asphalt was "about 1-1/2 to 2 inches lower than the adjoining concrete.

The judgment of the Trial Court states:

> This is a premises liability case in which the plaintiff alleges that she tripped and fell in the parking lot of a gas station and convenience store owned by the defendant. The plaintiff tripped over a "step down" where there was a height variation where an asphalt section of the parking lot met the concrete surface.
>
> - - - -
>
> The Court believes that the plaintiff proceeding in broad daylight should have seen the change in the level of the parking area surface and that the condition of the parking lot was open and obvious to anyone to such an extent that a reasonably prudent person exercising reasonable care for her own safety should have noticed and recognized the peril.

The motion for summary judgment is granted.

With due respect to the use of the word "step-down" by the plaintiff and the Trial Judge, the place where plaintiff "stubbed" her toe must have been a "step up" rather than a "step-down." As she described her movements, she negotiated a "step-up," as she first walked across the junction of the asphalt and concrete. On the occasion of her fall, the "step-up" at which she "stubbed" her toe, was at the opposite edge of the concrete, as she approached it from the telephone she used. The pictures exhibited to the record show that plaintiff measured the "step-down" which she crossed without injury, and not the "step-down" at which she "stubbed" her toe.

On appeal, plaintiff presents a single issue, as follows:

> 1. Whether given the totality of the circumstances faced by the Plaintiff there were genuine issues of material fact whether her conduct was reasonable thus precluding granting summary judgment for the Defendant.

-5-

In *Eaton v. McLain*, Tenn. 1994, 891 S.W.2d 587, the plaintiff-guest was injured when she attempted to go to the bathroom in the dark without turning on an available light, erroneously opened the door to a basement stair, stepped through the doorway and fell down the stairs. The Supreme Court affirmed a directed verdict for the homeowners and said:

> [1-3]   The standards governing trial courts in ruling on motions for directed verdict or JNOV in negligence cases are well established. In ruling on the motion, the court must take the strongest legitimate view of the evidence in favor of the non-moving party. In other words, the court must remove any conflict in the evidence by construing it in the light most favorable to the non-movant and discarding all countervailing evidence. The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence. *Sauls v. Evans*, 635 S.W.2d 377 (Tenn. 1982); *Holmes v. Wilson*, 551 S.W.2d 682 (Tenn. 1977). If there is any doubt as to the proper conclusions to be drawn from the evidence, the motion must be denied. *Crosslin v. Alsup*, 594 S.W.2d 379 (Tenn. 1980).
>
> - - - -
>
> [4]   This Court's adoption of the doctrine of comparative fault in *McIntyre* does not change these standards governing the trial court's assessment of the evidence; nor does it change the established standard governing the trial court's ultimate decision of whether to grant the motion. The trial court still must take the strongest legitimate view of the evidence in favor of the non-movant; and it must grant the motion only if reasonable minds could not differ as to the legal conclusions to be drawn from that evidence.
>
> The recitation of these standards of review does not, however, provide a satisfactory answer to the issue before us because *McIntyre* has radically changed the question to be asked by the trial court on a motion for directed verdict/JNOV which alleges negligence on the part of the plaintiff. The question now is *not* whether the plaintiff was guilty of *any* negligence that proximately caused the resulting injuries. Instead, the question is: assuming that both plaintiff and defendant have been found guilty of negligent conduct that proximately caused the injuries, was the *fault attributable to plaintiff equal to or greater than the fault attributable to the defendant*.
>
> - - - -
>
> [8]   In summary, the percentage of fault assigned to each party should be dependent upon all the circumstances of the case, including such factors as: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have

> known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.
>
> - - - -
>
> We need not, however, decide the question of whether Ms. Eaton's fault equaled or exceeded that of the McLains' as a matter of law because we agree with the Court of Appeals that Ms. Eaton failed to submit legally sufficient evidence as to the duty element of her claims of negligence.

Because of the last sentence of the preceding quotation, it is arguable that the remainder of the quotation is dicta. However, said remainder is the last published expression of the Supreme Court, and this Court will follow its guidelines.

The liability of the owner or controller of a premises to a person injured thereon is based upon superior knowledge of the owner or controller as to the condition of the premises, but such owner or controller is not liable for injuries sustained from dangers that are obvious, reasonably apparent or as well known to the invitee as to the owner or controller. *Illinois Cent. Ry. Co. v. Nichols*, 173 Tenn. 602, 118 S.W.2d 213 (1937); *Park v. Sinclair Refining Co.*, 24 Tenn. App. 204, 142 S.W.2d 321 (1940). The invitee assumes all normal or obvious risks attendant upon the use of the premises. *Gargaro v. Kroger Groc. & Baking Co.*, 22 Tenn. App. 70, 118 S.W.2d 561 (1938); 65 C.J.S. Negligence. § 50, p. 541.

Plaintiff's fall occurred in broad daylight at a point where the alleged dangerous condition was clearly visible, and plaintiff had an opportunity to see the condition a few minutes before her fall. Under these undisputed conditions, it is unnecessary to consider whether the difference in level was sufficient to support an action against the defendant.

The judgment of the Trial Court is affirmed at the cost of appellant. The cause is

remanded to the Trial Court for any necessary further proceedings.


## AFFIRMED AND REMANDED


_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCUR:


_____
WALTER W. BUSSART, JUDGE


CONCUR IN SEPARATE OPINION
BEN H. CANTRELL, JUDGE