# IN THE COURT OF APPEALS OF TENNESSEE
## AT MEMPHIS
### January 20, 2011 Session

## JAMIE RANDOLPH, on behalf of her deceased mother, CAROLYN RANDOLPH v. GIANFRANCO MEDURI, M.D., ET AL.

### Direct Appeal from the Circuit Court for Shelby County
### No. 84713 T.D.      Charles McPherson, Judge

---

### No. W2010-01224-COA-R3-CV - Filed March 2, 2011

---

This appeal arises out of an action to hold UT Medical Group, Inc. vicariously liable for the alleged negligence of its employees. In 1997, the original plaintiff filed an amended complaint for medical malpractice and wrongful death which specifically named two doctors as employees of the defendant who negligently caused the death of a patient. As trial approached, a substitute plaintiff attempted to add new allegations concerning the negligence of a third doctor. The trial court denied the motion to amend and later granted a motion in limine to exclude evidence concerning the alleged negligence of the third doctor as beyond the scope of the 1997 amended complaint. The plaintiff consequently was unable to offer expert testimony at trial to prove an employee of the defendant negligently caused the patient's death, and the trial court granted judgment in favor of the defendant. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Al H. Thomas and Aaron L. Thomas, Memphis, Tennessee, for the appellant, Jamie Randolph.

Stephen W. Vescovo and Claire M. Cissell, Memphis, Tennessee, for the appellee, U.T. Medical Group.

**OPINION**

## I. Background and Procedural History

This appeal concerns a complaint for medical malpractice and wrongful death filed in the Shelby County Circuit Court.[1]  On January 27, 1997, Jim Randolph filed an action on behalf of his deceased wife, Carolyn Randolph ("Patient"), against UT Medical Group, Inc. ("UTMG"); Michael Byrne, M.D.; and Gianfranco Meduri, M.D.  The complaint alleged Mr. Randolph took Patient to the emergency room of the Regional Medical Center (the "Med") in October 1994 after she complained of a cough with shortness of breath and chest pain on her left side.  An emergency room physician ordered a number of tests which led to a diagnosis of pneumonia.  Patient was thereafter admitted to the Med under the care of Dr. Byrne and attended to by Dr. Meduri, both of whom Mr. Randolph alleged were employees of UTMG.  A few days later and after receiving a sedative to address restlessness, Patient was found unresponsive and requiring resuscitation.  Patient survived initially and was transferred to the Intensive Care Unit.  Patient's condition nevertheless deteriorated and she died approximately eleven days later.

Mr. Randolph's original complaint sought recovery against Dr. Meduri, Dr. Byrne, and UTMG for the alleged negligence that caused the death of his wife.[2]  The complaint alleged "Defendants failed to properly assess the seriousness of [Patient's] medical condition and further failed to properly treat [Patient's] medical condition causing her to suffer serious and permanent harm and causing her to ultimately die."  According to the complaint, Patient incurred the following damages as a direct and proximate result of "the negligence and medical malpractice by the Defendants":

a.    caused to suffer and incur severe and physical damages to her body resulting in injuries initially and subsequent follow up care by physicians for continued treatment, thereby incurring substantial medical expenses as well;

b.    caused to suffer substantial loss of wages and/or the loss of the capacity to earn her normal wages;

---

[1]The complaint states Mr. Randolph previously filed a cause of action in Shelby County General Sessions Court which was dismissed without prejudice on December 13, 1996.

[2]Mr. Randolph's complaint labeled each doctor a "Defendant" who held himself out as possessing the necessary medical skill, knowledge, and expertise to diagnose and treat certain medical conditions in accordance with the standard of care expected of similarly situated physicians in the Memphis community.

c.      caused to endure severe emotion distress and mental anguish; and

d.      caused her to suffer the loss of the normal enjoyment of the pleasures of life until her death;

e.      caused her to die.

The complaint demanded judgment for compensatory damages against the defendants in the amount of $5,000,000.

The parties thereafter entered an agreed order removing Dr. Byrne from the lawsuit because he was an employee of the State of Tennessee entitled to dismissal under Tennessee Code Annotated section 9-8-301 *et seq.* The remaining defendants, Dr. Meduri and UTMG, responded to the complaint with a motion for a more definite statement. The defendants asserted the complaint failed to allege specific negligent acts or omissions for which relief could be granted against them. According to the defendants, "[e]ven under the liberal notice pleading rules the Complaint must give notice of some specific negligent act or omission so that the defendant doctor can at least be made aware of the malpractice with which he is charged."

On June 24, 1997, Mr. Randolph filed an amended complaint "sole[ly] for the purpose of adding a more definite statement as to the negligence of the Defendants Gianfranco Meduri, M.D., and UT Medical Group." The amended complaint contained the same allegations as the original but included two key additions:

19.      Defendant Meduri failed to properly treat Plaintiff Carolyn Randolph's seizures causing her to sustain increased hypoxia resulting in increased encephalopathy causing her serious and permanent damages causing her death.

20.      Defendant University Physicians Foundation, d/b/a U.T. Medical Group was negligent in not seeing that proper care was furnished to Plaintiff Carolyn Randolph. More specifically, Plaintiff alleges that the Hospital's agents and/or employees were negligent in the medical care and attention rendered to the Plaintiff, and did not exercise the degree of care, skill and diligence used by medical facilities and their staff generally in this community under the circumstances which presented themselves at the time, including but not limited to, the choice of medical techniques employed in caring for Plaintiff Carolyn Randolph.

Mr. Randolph non-suited his claim against Dr. Meduri approximately three years after the filing of the amended complaint, leaving UTMG as the only defendant.

The focus of Mr. Randolph's attention appears to have shifted over time from the alleged malpractice of Drs. Byrne and Meduri to that of Drs. Claudia Krasnoff and Beverly Williams-Cleaves. In a 2004 answer to the first set of interrogatories propounded by the defendants, Mr. Randolph stated he intended to offer expert testimony at trial to demonstrate that Dr. Krasnoff, a resident doctor at the Med, deviated from the standard of care when she prescribed the drug Ativan to Patient. The expert would further testify that Patient's cardiopulmonary arrest directly resulted from the overmedication of Patient with Ativan. The expert's later-filed affidavit explained the administration of Ativan caused Patient to suffer a respiratory depression, which caused her cardiopulmonary arrest and led to hypoxic encephalopathy. The expert's affidavit further stated that "as an attending physician, Beverly Williams-Cleaves, was aware or had a duty to be aware of the fact that Resident Dr. Krasnoff was ordering the Ativan. Dr. Cleaves too, then, would be negligent." The expert's affidavit concluded that "as a proximate result of the failed acts or omissions of Drs. Krasnoff and Cleaves, [Patient] suffered injuries that would not otherwise have occurred."

Mr. Randolph nevertheless did not seek to amend his complaint prior to the scheduled trial on November 19, 2009, to allege UTMG was liable for the negligent acts of Dr. Williams-Cleaves. Further, Mr. Randolph failed to appear at trial, requiring the trial court to continue the case.[3] A few days later, the court granted a motion to substitute the plaintiff/appellant, Jamie Randolph ("Plaintiff"), for her father and to reset trial for January 19, 2010. Plaintiff subsequently moved to amend the 1997 amended complaint under Rule 15.01 of the Tennessee Rules of Civil Procedure to state:

> 13.  On 10/16/1994 Carolyn Randolph was prescribed Ativan 2mg 4-6 times a day as needed for agitation. The attending UTMG physician who was in charge of Carolyn Randolph's care, Dr. Beverly Williams-Cleaves, was aware of or should have been aware the abovementioned prescription of Ativan.
>
> 14.  Carolyn Randolph was given 2mg of Ativan on 10/16/1994 at 10:25 p.m., and 2mg of Ativan on 10/17/1994 at 3:20 a.m.
>
> 20.  The attending UTMG physician who was in charge of Carolyn Randolph's care, Dr. Beverly Williams-Cleaves, was negligent in allowing Ativan to be given to Carolyn Randolph in the dosage at

---

[3]The parties' briefs suggest the court set the case for trial fifteen times between 1997 and 2010.

which it was given. Carolyn Randolph was given 4mg of Ativan within five hours which was a significant overdose. Carolyn Randolph was a debilitated patient who should not have received more than 2mg of Ativan over the course of twenty-four hours. It was this overdose of Ativan which caused Carolyn Randolph to go into the unresponsive state described above in paragraph 15. Defendant UTMG is liable for the abovementioned negligent act of its employee, Dr. Beverly Williams-Cleaves.

UTMG opposed the motion to amend for several reasons. First, UTMG submitted Plaintiff unduly delayed in filing her motion to amend because she and her predecessor waited over fifteen years to specify all of their allegations against UTMG. Second, UTMG argued Plaintiff failed to give proper notice of the new allegations because her predecessor did not set forth these allegations in response to its motion for more definite statement. UTMG added that neither plaintiff moved to amend the complaint to allege UTMG was responsible for the actions of Dr. Williams-Cleaves as an employee of UTMG until shortly before trial, even though Mr. Randolph filed an expert affidavit in 2004 discussing the role of the doctor in Patient's care. Third, UTMG submitted that allowing the proposed amendment would unduly prejudice the defendant because the ability of the witnesses to remember the events at issue had diminished over time. Fourth, UTMG argued the amendments were futile because Plaintiff could not establish an agency relationship between UTMG and Dr. Williams-Cleaves with respect to the acts alleged. Finally, UTMG argued the three-year statute of repose barred Plaintiff's amendments, contending Plaintiff could not amend her complaint to specify a vicarious liability claim against UTMG for the actions of Dr. Williams-Cleaves because any direct action against her had been extinguished by operation of law. The trial court agreed with UTMG and denied the motion to amend the complaint.

UTMG followed the denial of Plaintiff's motion to amend with a motion in limine to exclude proof beyond the scope of the negligence and agency allegations of the 1997 amended complaint. UTMG stated a companion case concerning the alleged negligence of the employees of the University of Tennessee Health Science Center ("UTHSC"), a distinct entity from UTMG, was pending in the Tennessee Claims Commission. According to UTMG, Plaintiff gave the impression she was pursuing her claims against the employees of UTHSC, including Dr. Williams-Cleaves, in the Claims Commission. The parties apparently agreed Dr. Williams-Cleaves was an employee of both UTHSC and UTMG but disagreed about whether she was acting within the scope of her employment with UTMG when the alleged negligence occurred. UTMG explained:

[I]t is important to understand Dr. Williams-Cleaves' role as an attending

physician in 1994. As an attending physician, Dr. Williams-Cleaves had two roles. She was on the faculty of the University of Tennessee Health Science Center, and as such, she taught and supervised the resident physicians, such as Dr. Krasnoff. She also had a private practice at UTMG, through which she rendered some direct patient care. UTMG is a separate and distinct entity from the University of Tennessee Health Science Center. UTMG would not be liable for any actions of Dr. Williams-Cleaves when the doctor was acting on behalf of the University of Tennessee, only.

UTMG argued Plaintiff should not be allowed to submit evidence of Dr. Williams-Cleaves's alleged negligence where Plaintiff did not specifically name Dr. Williams-Cleaves as a negligent employee or agent of UTMG in the 1997 amended complaint.

The trial court heard arguments on the motion in limine prior to trial. Plaintiff asked the court to admit evidence concerning the negligence of Dr. Williams-Cleaves despite the denial of her motion to amend. Plaintiff submitted the acts of Dr. Williams-Cleaves as an employee of UTMG fell within the general allegation of vicarious liability in the 1997 amended complaint. Plaintiff further submitted amendment of the complaint to specifically allege negligence on behalf of Dr. Williams-Cleaves and UTMG's vicarious liability for that act of negligence was preferable but not essential to pursuit of Plaintiff's claim. Additionally, Plaintiff moved to amend the complaint under Rule 15.02 of the Tennessee Rules of Civil Procedure to conform with the evidence, although no evidence had been presented. The trial court again agreed with UTMG, granting the motion in limine and rejecting the Rule 15.02 motion to amend.

The grant of UTMG's motion in limine effectively ended the case. Plaintiff's claim for vicarious liability against UTMG hinged on expert proof intended to establish the negligence of Dr. Williams-Cleaves. After counsel conceded Plaintiff lacked expert proof to establish the negligence of anyone other than Dr. Williams-Cleaves, UTMG moved for judgment as a matter of law. The trial court determined Plaintiff could not carry her burden of proof as a matter of law and accordingly granted judgment in favor of the defendant.[4] Plaintiff later moved under Rule 59.04 of the Tennessee Rules of Civil Procedure to alter or amend the order granting UTMG's motion in limine and the order granting a final judgment in favor of the UTMG. The trial court denied the motion and this appeal ensued.

_____

[4]The procedure employed to resolve this dispute is somewhat unique and arguably inconsistent with Rule 41.02 of the Tennessee Rules of Civil Procedure. Plaintiff nevertheless does not take issue with the manner in which the court ruled.

## II. Issue Presented

The sole issue before this Court, as we perceive it, is whether the trial court abused its discretion when it excluded evidence of Dr. Williams-Cleaves's alleged negligence. Plaintiff raised additional issues with respect to the denial of her Rule 15.01 and Rule 15.02 motions to amend but waived these issues when she decided not to address them in the argument section of her brief. Tenn. R. App. P. 27(a)(7); Tenn. Ct. App. R. 6(a), (b); *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) (citations omitted).

## III. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005) (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004)). The same standard applies when a trial court determines whether to exclude evidence at variance with the pleadings. *Sanford v. Waugh & Co.*, 328 S.W.3d 836, 847 (Tenn. 2010) (citing *Biscan*, 160 S.W.3d at 468). "The trial court has great discretion to admit or to disallow evidence subject to an objection based upon the scope of the issues and pleadings and to determine whether the evidence is encompassed by the general issues raised in the pleadings." 71 C.J.S. *Pleading* § 779 (2000) (citations omitted); *accord* 61b Am. Jur. 2d *Pleading* § 922 (2d ed. 1999) (citation omitted). A trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb*, 320 S.W.3d 246, 249-50 (Tenn. 2010) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

## IV. Analysis

Tennessee courts have long adhered to the principle that a party's proof must correspond with the allegations set forth in the pleadings. *E.g. Fid.-Phenix Fire Ins. Co. of N.Y. v. Jackson*, 181 S.W.2d 625, 629 (Tenn. 1944); *Elec. Controls v. Ponderosa Fibres of Am.*, 19 S.W.3d 222, 227 (Tenn. Ct. App. 1999) (citation omitted); *John J. Heirigs Const. Co. v. Exide*, 709 S.W.2d 604, 607 (Tenn. Ct. App. 1986) (citations omitted); *Park v. Sinclair Ref. Co.*, 142 S.W.2d 321, 326 (Tenn. Ct. App. 1940) (citations omitted).

> "While technical forms in pleadings are not now required, still the parties should be confined to the case made in the pleadings; the proof should correspond with the allegations; the parties ought not to be allowed to charge one case in their pleadings and prove a case substantially different . . . ."

*Am. Lead Pencil Co. v. Nashville, C. & St. L. Ry.*, 134 S.W. 613, 615 (Tenn. 1911) (quoting *Foster*

*v. Jackson*, 67 Tenn. (8 Baxt.) 433, 434-35 (1874)); *see also* 61b Am. Jur. 2d *Pleading* § 925 (2d ed. 1999) (citations omitted) ("Under modern practice, as well as at common law, a plaintiff cannot sue on one cause of action and recover on another."). Judgments awarded beyond the scope of the pleadings are void.[5] *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955) (citations omitted). The policy underpinning this rule is that "since the purpose of pleadings is to give notice to all concerned regarding what may be adjudicated, a judgment beyond the scope of the pleadings is beyond the notice given the parties and thus should not be enforced." *Id.* at 497.

The advent of Rule 15.02 of the Tennessee Rules of Civil Procedure has modified the above rule to an extent. *Elec. Controls*, 19 S.W.3d at 227 n.3 (citing Tenn. R. Civ. P. 15.02). Rule 15.02 allows trial of an unpled issue by express or implied consent of an adverse party followed by amendment of the pleadings to encompass the issue. Tenn. R. Civ. P. 15.02; *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888, 890 (Tenn. 1980). A party's proof nevertheless remains confined to the pleadings unless the adverse party impliedly or expressly consents to consideration of the unpled issue at trial. *Snodgrass v. Freemon*, M2002-01247-COA-R3-CV, 2003 WL 21748805, at *1 (Tenn. Ct. App. July 29, 2003) (citing *Hiller v. Hailey*, 915 S.W.2d 800, 804-05 (Tenn. Ct. App. 1995)). An unpled issue cannot serve as the basis of a judgment in favor of the plaintiff absent trial by consent. *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001) (footnote omitted) (citations omitted).

It follows that a trial court may exclude proof of an issue not fairly within the scope of the pleadings upon the objection of the adverse party. *See Sanford v. Waugh & Co.*, 328 S.W.3d 836, 847 (Tenn. 2010) (affirming the exclusion of proof on issues not raised in the plaintiff's complaint). Courts, however, should only exclude proof that materially varies from the pleadings because only a material variance defeats a party's right to recover. *See McCray v. Hughes*, 385 S.W.2d 124, 126 (Tenn. Ct. App. 1964) (citation omitted). A variance between the pleadings and the proof is material only where an adverse party is misled to his or her prejudice.[6] *McCray*, 385 S.W.2d at 126 (citation omitted); *see also*

---

[5]Rule 15.02 creates an exception to this general rule. *Elec. Controls v. Ponderosa Fibres of Am.*, 19 S.W.3d 222, 227 n.3 (Tenn. Ct. App. 1999) (citing Tenn. R. Civ. P. 15.02). The trial court determined, however, the parties did not try the issue of Dr. Williams-Cleaves's negligence by express or implied consent. Plaintiff does not argue the trial court erred in this regard.

[6]Rule 15.02 reinforces the role of prejudice when determining whether to exclude evidence at variance with the pleadings. It states, in pertinent part:

If evidence is objected to at the trial on the ground that it is not within the issues made by

(continued...)

*Sanford*, 328 S.W.3d at 847 (placing some emphasis on the fact that the defendants had a reasonable argument of unfair surprise). This Court has explained:

> "Modern authorities hold, and statutes sometimes expressly provide that no variance between the allegation of a pleading and the proof offered to sustain it shall be deemed material if the adverse party is not surprised or misled to his prejudice in maintaining his action or defense on the merits . . . . It may be fatal where the adverse party is misled to his prejudice, but otherwise it is to be disregarded as immaterial."

*McMahan v. McMahan*, 276 S.W.2d 738, 746 (Tenn. Ct. App. 1954) (quoting 71 C.J.S. *Pleading* § 535); *see also* 61b Am. Jur. 2d *Pleading* § 923 (2d ed. 1999) (explaining that a variance is immaterial if an adverse party receives sufficient notice of unpled issues and does not suffer prejudice during litigation of those issues). "The purpose of this rule is to prevent surprise; where there is no surprise, there is no good reason for enforcing the rule on variance." 61b Am. Jur. 2d *Pleading* § 923 (2d ed. 1999) (citations omitted).

The same principles apply in negligence and wrongful death actions. 61b Am. Jur. 2d *Pleading* §§ 926, 927 (2d ed. 1999). "The rule is that where the charge in the declaration as to which a variance is claimed does not go to the defendant's alleged acts of negligence and does not, in any way, mislead the defendant, there is no fatal variance." *Harvey v. S. Ry. Co.*, 399 S.W.2d 523, 526 (Tenn. Ct. App. 1965) (citations omitted).

> While the courts are liberal with respect to variances between the allegations and the proof in actions founded on negligence, it is a settled rule that the plaintiff must recover, if at all, upon proof establishing the specific acts of negligence alleged in his declaration, complaint, or petition. Having pleaded specifically the act or acts constituting the defendant's negligence, other acts of negligence cannot be relied upon unless the declaration, complaint, or petition is amended to conform to the proof.

61b Am. Jur. 2d *Pleading* § 926 (2d ed. 1999). "Where the plaintiff alleges, in his pleading, acts of negligence causing . . . death, he may recover only upon proof of such allegations."

---

[6](...continued)
the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice that party in maintaining the action or defense upon the merits.

Tenn. R. Civ. P. 15.02.

61b Am. Jur. 2d *Pleading* § 927 (2d ed. 1999).

The decision of whether a trial court should exclude proof because it materially varies from the pleadings ultimately depends on the scope of the allegations therein. A court evaluating this issue encounters competing concerns. On one hand, courts typically construe complaints in favor of the plaintiff, *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 104 (Tenn. 2010) (citing *Holloway v. Putnam Cnty.,* 534 S.W.2d 292, 296 (Tenn.1976)), and courts as a general rule have liberally construed pleadings when addressing the question of variance, *Lampley v. Waygood*, 422 S.W.2d 708, 711 (Tenn. Ct. App. 1967). On the other hand, "[a]n essential purpose of a pleading is to give notice of the issues to be tried so that the opposing party will be able to prepare for trial," *Abshure*, 325 S.W.3d at 103 (citations omitted), and courts must guard against the prejudice that arises when a plaintiff recovers for claims not fairly within the scope of the complaint, *see Brown*, 281 S.W.2d at 497.

A trial court resolving these competing concerns must construe the pleadings "to do substantial justice." Tenn. R. Civ. P. 8.06. In many cases, substantial justice will require a liberal construction of the pleadings that permits adjudication of a plaintiff's claim on the merits. A court, however, is not bound to read a claim into a pleading where none exists. *Rawlings*, 78 S.W.3d at 300 (citing *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977); *Rampy v. ICI Acrylics, Inc*., 898 S.W.2d 196, 198 (Tenn. Ct. App. 1994)). "While a complaint need not contain 'in minute detail' the facts giving rise to the claim, it nevertheless must contain allegations 'from which an inference may fairly be drawn that evidence on these material points will be introduced at trial.'" *Utter v. Sherrod*, 132 S.W.3d 344, 351 (Tenn. Ct. App. 2004) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 704 (Tenn. 2002)). "'[T]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint.'" *Id.* (quoting *Trau-Med*, 71 S.W.3d at 704).

The question before this Court is whether the trial court abused its discretion when it concluded proof of Dr. Williams-Cleaves's negligence was beyond the scope of the allegations in the 1997 amended complaint.[7] Plaintiff argues the general allegation of vicarious liability contained in the 1997 amended complaint was sufficient to permit proof on the alleged negligence of Dr. Williams-Cleaves. Plaintiff submits the general allegation

_____

[7]The appellant does not set forth the standard of review in her brief and therefore does not expressly analyze whether the trial court's alleged error amounts to an abuse of discretion. We note for the benefit of the Bar that a recent amendment to Rule 27 of the Tennessee Rules of Appellate Procedure now requires for each issue presented on appeal "a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)[.]" Tenn. R. App. P. 27(a)(7)(B) (effective July 1, 2010).

against UTMG satisfied the minimal pleading requirements of Rule 8.01 of the Tennessee Rules of Civil Procedure as a matter of law, even if the complaint did not name Dr. Williams-Cleaves as an employee committing negligent acts for which UTMG was liable. A liberal construction of the 1997 amended complaint would provide a satisfactory basis upon which to hold UTMG vicariously liable for Dr. Williams-Cleaves's negligence according to Plaintiff.

Plaintiff further argues that consideration of Dr. Williams-Cleaves's negligence would not prejudice UTMG. Plaintiff contends the parties knew about and litigated the facts surrounding Dr. Williams-Cleaves's negligence for several years. Plaintiff submits

> the litigation established way back in 2004, and then from 2006-2009, that the only basis for UTMG's liability was the alleged negligence of its employee, Dr. Williams-Cleaves; that this circuit court action would proceed solely based on UTMG's vicarious liability for the negligence of Dr. Williams-Cleaves; and that this was the sole issue to be tried at trial.

Plaintiff points to a 2006 motion to transfer filed in the Claims Commission as giving notice to UTMG that her predecessor intended to pursue a claim against Dr. Williams-Cleaves as a UTMG employee in the circuit court case. Plaintiff submits UTMG's counsel, Steven Vescovo, received a copy of that motion and received notice that Plaintiff would pursue a claim of vicarious liability for Dr. Williams-Cleaves's actions in the circuit court case. Although Plaintiff does not expressly reference materiality, she essentially argues presentation of the issue before the trial court would not surprise or prejudice UTMG and, thus, no fatal variance existed that would support excluding evidence of Dr. Williams-Cleaves's alleged negligence.

UTMG wholly disagrees.[8] UTMG argues the purpose of a complaint is to notify a defendant of the causes of action alleged against it and the facts giving rise thereto. UTMG contends the 1997 amended complaint did not give notice that Dr. Krasnoff was allegedly negligent in ordering an overdose of Ativan, that Dr. Williams-Cleaves was allegedly negligent because she failed to discover and countermand that order, or that UTMG was vicariously liable for their actions. UTMG further explains the 1997 amended complaint did

---

[8]UTMG submits the 1997 amended complaint did not allege vicarious liability as to the defendant because paragraph twenty of the complaint specifically referenced "the hospital" and UTMG is not a hospital. Plaintiff responds that the sole reference to "the hospital" in paragraph twenty is a scrivener's error and refers to UTMG. It is not entirely clear whether the trial court deemed "the hospital" as referring to UTMG. We assume for the sake of argument that paragraph twenty of the 1997 amended complaint alleged UTMG's agents and/or employees were negligent in the medical care and attention rendered to Patient.

-11-

not put it on notice that Plaintiff believed Dr. Williams-Cleaves was acting within the scope of her employment with UTMG when supervising a UTHSC resident, Dr. Krasnoff, who allegedly administered a lethal dose of Ativan. UTMG concludes the trial court correctly excluded any evidence concerning the alleged negligence of Dr. Williams-Cleaves, especially where UTMG filed a motion for more definite statement more than twelve years prior to trial.

We are unable to conclude the trial court abused its discretion when it excluded evidence of Dr. Williams-Cleaves's negligence. We disagree with Plaintiff's contention that the general allegation of vicarious liability in the 1997 amended complaint provided UTMG sufficient notice, as a matter of law, that Plaintiff intended to hold UTMG responsible for the alleged negligence of Dr. Williams-Cleaves. Courts in other jurisdictions have stated that a plaintiff generally alleging negligence of a defendant employer under the theory of respondeat superior need not name the specific employee who committed the underlying negligent acts. *See O'Bryan v. Holy See*, 556 F.3d 361, 382 n.9 (6th Cir. 2009) (citation omitted) ("General allegations against employees are sufficient for the purposes of notice pleading: 'a complaint that generally alleges an employer's negligence need not specifically identify each employee involved to hold the employer liable under respondeat superior.'"); *Dillard v. Kern Cnty.*, 144 P.2d 365, 369 (Cal. 1943) (citations omitted) ("Ordinarily, in pleading the negligence of defendant employer, based upon respondeat superior, the plaintiff need not allege the name of the employee because of the superior position of the employer."). We conclude, however, this rule should not govern our analysis where the plaintiff has specifically named certain employees in the complaint as committing the negligence for which the defendant employer is liable. *Cf. E. Tenn. Coal Co. v. Daniel*, 42 S.W. 1062, 1064 (Tenn. 1897) ("[W]here definite acts of negligence are alleged in the declaration as grounds of liability against the defendant, the proof will be confined to the acts alleged."). Plaintiff narrowed the scope of the dispute through her specific allegations with respect to Drs. Meduri and Byrne. Her decision to name specifically these persons and their acts of negligence misled UTMG with respect to the scope of Plaintiff's claims and, thus, gives reason to reject the above rule here.

We further disagree with the suggestion UTMG failed to demonstrate that proof of Dr. Williams-Cleaves's negligence materially varied from the allegations set forth in the 1997 amended complaint. A liberal reading of the complaint reveals Plaintiff alleged a claim of vicarious liability only with respect to the negligence of Drs. Meduri and Byrne. Nowhere does the 1997 amended complaint allege Dr. Williams-Cleaves was an employee of UTMG whose negligence contributed to the death of Patient. Plaintiff's complaint simply did not contain allegations from which UTMG could fairly draw the inference that Plaintiff intended to hold UTMG liable for the actions of Dr. Williams-Cleaves. As a result, the 1997 amended complaint did not give UTMG sufficient notice of Plaintiff's intent to hold the defendant liable for the alleged negligence of Dr. Williams-Cleaves.

The record likewise does not demonstrate UTMG received sufficient notice of Plaintiff's intent to pursue this issue through other means. As UTMG correctly points out in its brief, Plaintiff's various complaints and responses to UTMG's discovery requests are devoid of any reference to Dr. Williams-Cleaves, either by name or description. The only express reference in the record as to the negligence of Dr. Williams-Cleaves is found in a 2004 expert affidavit. That affidavit nonetheless does not establish that Dr. Williams-Cleaves committed said negligence within the scope of her employment with UTMG, and Plaintiff's responses to the defendant's first set of interrogatories only indicate she intended to establish the negligence of Dr. Krasnoff as a basis for her claim against UTMG. Although UTMG's counsel may have received some notice via the motion to transfer in the companion case, Plaintiff did not attempt to amend her complaint consistent with the representation contained in the motion until 2010. Under the particular facts of this case, UTMG had a reasonable argument that Plaintiff's last-minute claim regarding UTMG's vicarious liability for the negligence of Dr. Williams-Cleaves constituted unfair surprise. *See Sanford v. Waugh & Co.*, 328 S.W.3d 836, 848 (Tenn. 2010) (affirming the grant of a motion in limine excluding evidence on a plaintiff's theory where the defendants "had a reasonable argument that they were unfairly surprised on the eve of trial" by the plaintiff's "last-minute claim").

We conclude the trial court did not abuse its discretion in this case. Plaintiff waited over twelve years from the filing of her complaint and over five years after her predecessor admittedly learned of Dr. Williams-Cleaves's role in Patient's care before she attempted to allege a claim for vicarious liability based on the acts of Dr. Williams-Cleaves in her capacity as an employee of UTMG. Although the record suggests UTMG may have been aware that an issue regarding Dr. Williams-Cleaves had arisen, it does not establish UTMG had sufficient notice that Plaintiff intended to litigate that issue in the circuit court case as opposed to the companion case in the Claims Commission. The trial court apparently credited UTMG's argument that admission of proof regarding Dr. Williams-Cleaves's negligence would prejudice the defendant. The court consequently excluded the proof as beyond the scope of the pleadings and granted judgment in favor of UTMG. While the trial court arguably could have permitted proof of Dr. Williams-Cleaves's negligence, we disagree the court abused its discretion in disallowing it under the circumstances of this case. Plaintiff has accordingly presented no basis upon which to overturn the judgment of the trial court.[9] We affirm the trial court's decision.

---

[9]We note Plaintiff did not argue before the trial court and does not argue before this Court that a continuance of the case allowing UTMG sufficient opportunity to prepare a defense as to the negligence of Dr. Williams-Cleaves was the proper course of action.

## V. Conclusion

For the foregoing reasons, we affirm the decision of the trial court. Costs of the appeal are taxed to the appellant, Jamie Randolph, and her surety for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE