# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### June 10, 2015 Session

## HEATHER ANNE GULISH GLADWELL v. TONY NEIL GLADWELL, JR.

**Appeal from the Chancery Court for Henry County**
**No. 22240     Donald P. Harris, Judge**

_____

**No. W2014-01095-COA-R3-CV – Filed July 20, 2015**
_____

Husband appeals the trial court's division of property, award of rehabilitative alimony, and allocation of the federal tax deduction applicable to the parties' children in this divorce action.  Wife also appeals the trial court's property division and additionally appeals its award of attorney's fees as alimony *in solido* to Husband.  We affirm the trial court's property division, award of rehabilitative alimony to Husband, and allocation of the federal tax deduction to Wife.  We reverse the award of alimony *in solido* to Husband.  This matter is remanded to the trial court for entry of an order setting Wife's child support obligation in a definite amount as required by Tennessee Code Annotated § 36-5-101(a)(2).

### Tenn. R. App. P. 3 Appeal as of Right: Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG, J., joined and J. STEVEN STAFFORD, P.J., W.S., filed a separate opinion concurring in part and dissenting in part.

Catherine B. Clayton, Jackson, Tennessee, for the appellant, Tony Neil Gladwell, Jr.

W. Brown Hawley, II, and George Robert Whitfield, III, Paris, Tennessee, for the appellee, Heather Anne Gulish Gladwell.

### OPINION

This is a divorce case.  Heather Anne Gulish Gladwell ("Wife") and Tony Neil Gladwell, Jr. ("Husband") were married in 1997 in Philadelphia, Pennsylvania.  Wife was 28 years of age at the time of the marriage; Husband was 26.  They are both college

graduates – Husband is an engineer and Wife is an orthopedic surgeon. The parties moved from Pennsylvania to Wife's hometown in Henry County, Tennessee, in 2003. They have three minor children.

In January 2013, Wife filed a complaint for divorce on the grounds of inappropriate marital conduct and irreconcilable differences. In her complaint, Wife prayed for "a reasonable division" of the parties' property "with due consideration to [Wife] for her having provided all or a majority of the income of the marriage." She also prayed for the parties' debt to be divided equally, for alimony *in solido* in the division of the martial estate, and to be designated primary residential parent of the parties' children with parenting time divided equally.

In February 2013, Husband answered and counter-claimed for divorce on the grounds of inappropriate marital conduct, adultery, and irreconcilable differences. He prayed to be designated primary residential parent of the parties' children and for child support. Husband also prayed for an equitable division of the parties' property and debt, for alimony *pendente lite*, and for "a reasonable amount of alimony upon final hearing of [the] cause." Wife answered Husband's counter-complaint in March 2013. Wife admitted to Husband's allegations with respect to grounds for divorce but denied that he should be designated primary residential parent of the parties' children.

Acrimonious proceedings ensued, and in October 2013 the trial court ordered the parties to participate in mediation. The parties eventually entered an agreed permanent parenting plan that designated Husband primary residential parent for the parties' youngest child and Wife primary residential parent for the two older children. The parenting plan provided for alternating parenting time on a week-to-week basis and allocated equal parenting time to the parties with respect to all three children. The parenting plan provided that Wife would pay child support to Husband, but did not indicate a child support amount. Rather, the parties' incomes were left "to be determined" by further proceedings. With respect to the federal income tax deductions permitted for the children, the parenting plan provided:

> Beginning 2014, so long as three children can be claimed, Mother shall claim two children in even years and one child in odd years, and Father shall claim two children in odd years and one child in even years. When there are two children to claim, the parties shall each claim one child and when there is one child to claim, the parties shall alternate. Parties agree to have their respective tax returns analyzed and, in the event it would benefit Mother to claim all children, then Mother agrees to pay Father's tax benefit from his return to him and, after deducting this payment, split remaining tax benefit Mother would receive by claiming all the children equally between the parties.

2

The [Mother] may claim the exemptions for the child or children so long as child support payments are current by the claiming parent on January 15 of the year when the return is due. . . .

The [Mother and Father] will furnish IRS Form 8332 to the parent entitled to the exemption by February 15 of the year the tax return is due.[1]

Following a five-day hearing in February 2014, the trial court awarded Husband a divorce on stipulated grounds by order entered February 27, 2014. The trial court entered memorandums on March 27 and April 10, and a judgment incorporating the memorandums on May 12, 2014. The trial court determined that Wife's interest in her medical practice at Henry County Orthopaedic was a gift from her father and is her separate property. It valued the marital estate at $2,525,670 (net), including Wife's interest in Gulish-Gladwell LLC, which owns a medical building. The trial court awarded Wife marital property valued at $1,657,450, and awarded Husband martial property valued at $868,220. It "equalized" the division of marital property by awarding Husband a judgment against Wife in the amount of $394,615. The trial court ruled that Wife may pay the judgment over a period of 20 years at six percent interest, compounded monthly – with monthly payments in the amount of $2,827.14[2]. The trial court determined that Wife's income was $43,973 per month. It awarded Husband, who has not worked full-time outside the home since 2003, rehabilitative alimony in the amount of $2,000 per month for 36 months and attorney's fees in the amount of $60,000 as alimony *in solido*. The trial court set Wife's child support obligation at $3,956 per month. It deviated downward from the child support guidelines with respect to Husband's child support obligation "so that Husband's ability to earn will not be considered during the same 36 month period [.]" The trial court also ruled that Wife would be permitted to claim the applicable dependency exemption for the children for federal tax purposes. On June 11, 2014, Husband filed a timely notice of appeal to this Court, and Wife filed a motion to stay the trial court's judgment with respect to alimony *in solido* and the "equalization" award to Husband. The trial court denied Wife's motion to stay by order entered August 4, 2014.

### Issues Presented

Husband presents the following issues for our review, as stated in his brief:

1) The trial court erred in failing to award alimony *in futuro* to maintain Mr. Gladwell's standard of living during the marriage where Dr. Gladwell has the ability to pay.

---

[1]The parenting plan was approved and ratified by the trial court by order entered January 28, 2014.
[2] Over the twenty-year period, including interest, Husband will receive a total payment of $678,514.

3

2) The Husband should be awarded alimony *in solido* to cover his appeal costs.

3) The division of property is inequitable because the trial court failed to consider the ability of the parties for future acquisitions, and failed to include in its "50/50" division the value of Dr. Gladwell's medical practice and other assets received by Dr. Gladwell, Dr. Gladwell's dissipation of assets, and Mr. Gladwell's loan and credit card debt.

4) The trial court erred in disregarding Dr. Gladwell's admission on her financial statement, as well as the valuation by the first expert appraiser hired by Dr. Gladwell, in valuing her 49% interest in the medical building owned by her and her father (Gulish-Gladwell partnership).

5) The trial court erred in *sua sponte* awarding the federal tax exemption to Dr. Gladwell where the permanent parenting plan previously entered had resolved that issue and neither any motion to modify nor any proof to modify the existing PPP's allocation of the tax exemptions was before the court.

Wife raises four additional issues in her brief:

1) Whether the trial court erred in failing to adjust the award of marital property to account for marital debts paid by each party after the divorce complaint was filed.

2) Whether the trial court erred in failing to adjust the award of marital property to account for Husband's dissipation and failure to account for marital assets.

3) Whether the trial court erred in finding that Wife's minority interest in Gulish Gladwell, LLC is marital property.

4) Whether the trial court erred in awarding $60,000 in attorney's fees to Husband.

**Standard of Review**

Appellate review of the findings of fact of a trial court sitting without a jury is *de novo* upon the record with a presumption of correctness unless the evidence preponderates otherwise. *In re Angela E.,* 303 S.W.3d 240, 246 (Tenn. 2010) (citation omitted); Tenn. R. App. P. 13(d). Insofar as a factual finding is based on the trial court's assessment of witness credibility, we will not reverse that finding

4

absent clear and convincing evidence to the contrary. *In re: M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). No presumption of correctness attaches to a trial court's conclusions on issues of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d).

## Division of Property

We turn first to the parties' assertions that the trial court erred by failing to equitably divide their property and debt. Husband asserts that the trial court erred by valuing the medical building owned by Gulish-Gladwell LLC ("the LLC") at $2,450,000 – the value submitted by appraiser James P. Murdaugh ("Mr. Murdaugh"). In the three-sentence argument on this issue in his brief, Husband contends:

> [Wife's] October 2012 Financial Statement establishing the value of the medical building as $2,921,000 is an admission of the true value of the building. Mr. Flowers appraised the building at $3,500[,]000 ($3,690,000 using the income approach). Mr. Murdaugh, who was aware of the price he had to beat, came in low at $2,450,000.

Wife, on the other hand, asserts that she does not have a 49 percent interest in the medical building, but in the LLC. She asserts that the LLC, in turn, owns an interest in the building. Wife asserts that her expert valued her interest in the LLC at $361,361 and that Husband's expert offered an opinion regarding the value of the medical building. She contends, "the trial court's valuation of Wife's interest in the LLC is actually what is at issue – not the value of the medical building." Wife asserts that the trial court failed to discount the value of the LLC to reflect Wife's minority (49 percent) interest, and that "the trial court's valuation of the LLC was actually skewed in favor of Husband by 50%." She submits that the trial court's value should not be disturbed or, alternatively, should be decreased.

The record transmitted to this Court contains exhibits entitled "Gulish Gladwell Capital Accounts using Flowers Real Estate Appraisal" and "Gulish Gladwell Capital Accounts using Murdaugh Real Estate Appraisal." Both appraisals recite a 2012 "net book value" of $1,972,909 for the building. The Murdaugh appraisal values the building at $2,450,000; the Flowers appraisal values the building at $3,510,000. The Murdaugh appraisal recites total Gulish-Gladwell capital in the amount of $1,312,275 and assigns value in the amount of $361,361 to Wife. The Flowers appraisal recites total capital in the amount of $2,373,275 and assigns value of $861,361 to Wife. We observe that the discrepancy between the values arises from the appraisals of the real property. As this Court has noted:

> An appraisal of real property is, of course, an expert's estimate of the fair market value of the property, i.e., the sales price that the property would

bring if it were sold in an arms-length transaction. Such an estimate must be utilized by the courts in a divorce if the jointly-held property is not to be sold, as a mechanism for the party being divested of his or her interest in the property to be compensated for that interest.

*Clement v. Clement*, No. W2006-00691-COA-R3-CV, 2007 WL 2318659, at *4 (Tenn. Ct. App. Aug. 15, 2007).

Although the trial court did not make an explicit credibility finding with respect to the appraisals, it stated in its memorandums that it relied on Mr. Murdaugh's values with respect to the value of Wife's interest in the LLC. The weight to be assigned to competing expert opinions is a question of fact and is within the province of the trier of fact. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 275 (Tenn. 2005). We cannot say the evidence preponderates against the trial court's finding with respect to the value of Wife's interest in the LLC.

Husband additionally asserts that the trial court's division of property was not equitable because the trial court failed to consider the value of Wife's interest in Henry County Orthopaedic, the medical practice in which she practices with her father.[3] He asserts that the trial court did not include Wife's "$150,000.00 increase in her interest in the practice as marital property." Wife, on the other hand, asserts that she does not, in fact, have an ownership interest in the practice. She alternatively asserts that any interest she may be construed to have was a gift from her Father and not marital property. Wife also asserts that the trial court erred by failing to consider marital expenses that she paid after the complaint for divorce was filed, Husband's dissipation of marital property, and/or Husband's failure to account for marital assets. In his reply brief, Husband asserts that, even if the trial court correctly determined that Wife's interest in the medical practice was a gift, that gift was valued at only $20,000 – the value of the stock offered to Wife by her father. He asserts that the "agreed" value of Wife's interest in the practice is $170,000, and that the increase in the value of the practice is marital property.

The trial court made detailed findings with respect to the parties' marital estate in this case. It concluded that the parties had accumulated a net marital estate valued at $2,525,670. It awarded property valued at $868,220 to Husband, and property valued at $1,657,450 to Wife. In order to "equalize" the division of marital property, the trial court also awarded Husband a judgment in the amount of $394,615 to be paid monthly, over a

---

[3]Although Husband references Wife's medical practice, "other assets" received by Wife, alleged dissipation of assets by Wife, and his loan and credit card debt in his Statement of the Issues, Husband discusses only the trial court's failure to consider Wife's interest in the medical practice in the Argument section of his brief. Issues not argued in the Argument section of a party's brief are waived. *E.g., Randolph v. Meduri*, 416 S.W.3d 378, 383 (Tenn. Ct. App. 2011).

6

period of 20 years, with interest at the rate of 6 percent compounded monthly.[4]  The trial court ordered Wife to pay Husband $2,827.14 per month in fulfillment of this award and imposed a lien on real property awarded to Wife to secure the judgment.  Thus, the net result of the trial court's property division is an award to Wife of property valued at $1,657,450 and an award to Husband of $1,262,835, which includes marital property valued at $868,220 and a judgment of $394,615.  We additionally observe that, including interest on the equalization judgment, the award to Husband ultimately totals $1,546,734.

The trial court made no findings with respect to marital expenses paid by Wife from the date the complaint for divorce was filed through the date of the final judgment in this matter.  In her brief, Wife asserts that the parties initially agreed that Wife would pay *pendente lite* support to Husband in the amount of $17,000 per month for three months, up to $4,500 for Husband's credit card charges, and $3,909 per month in child support.  She asserts that the trial court subsequently ordered the parties to pay their own bills after the three-month period, and that it specifically stated during various hearings that it would adjust the final property division to account for joint expenses paid by Wife, but failed to do so.  Wife contends that the trial court failed to award her a credit in the amount of $70,979.95 for joint expenses she paid after the three-month period.  Wife additionally asserts that the trial court failed to adjust the property award to take into account Husband's alleged dissipation of martial assets and/or unexplained cash withdrawals from their joint accounts.  She requests a reduction in the property awarded to Husband in the amount of $52,859.77 to compensate for the dissipation/disappearance of marital funds.  In his reply brief, Husband asserts that he did not dissipate marital assets but "attempted to preserve assets so he could pay marital bills in light of Wife's erratic behavior[.]"  He also asserts that Wife expended significant marital funds that reduced the martial estate and that she dissipated martial funds by paying for "numerous exotic and expensive trips" with her paramour.

In a divorce action, the trial court must first identify all of the parties' property and classify it as either marital or separate.  *E.g., Beyer v. Beyer*, 428 S.W.3d 59, 80 (Tenn. Ct. App. 2013).  The classification and valuation of property are questions of fact.  *Id.* After the trial court has classified and valued the property, it must divide the marital estate equitably in light of all the circumstances, including the factors enumerated in Tennessee Code Annotated § 36–4–121(c). *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App.1988).  Trial courts are afforded "wide latitude in fashioning an equitable division of marital property."  *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005).  An equitable division of marital property is not necessarily a precisely equal division, but one that is fair in light of all the circumstances.  *E.g., id.*  "Thus, we will

---

[4]Whether this judgment properly is characterized as an award of alimony *in solido* has not been raised as an issue on appeal.  We observe that the trial court stated that the judgment would be paid in accordance with a payment schedule attached as Exhibit B to its May 2014 judgment.  Exhibit B does not appear to be included in the record transmitted for our review, but the accuracy of the schedule is not disputed.

7

ordinarily defer to the trial court's division of the parties' marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence." *Id.* (citations omitted). Further, "[i]n the final analysis, the appropriateness of the trial court's division depends on its results[,]" notwithstanding an erroneous finding on one factor that does not impact the overall equitableness of the division. *Id.* (citations omitted).

In its April 2014 memorandum, the trial court found that Wife acquired her interest in the medical practice as a gift from her father. The trial court found that the value of the practice was Wife's separate property, and that it had not been included in the parties' marital assets. Even if we assume, *arguendo*, that the trial court erred in failing to classify as marital property the alleged increase in value of Wife's interest in the medical practice in the amount of $150,000, as alleged by Husband, in light of the totality of the property division, the error would not render the overall property division inequitable. Similarly, after reviewing this record in light of the factors contained in section 36-4-121(c), we cannot say the award of property is rendered inequitable even assuming some dissipation of marital assets by both parties and that Wife paid joint marital expenses during the pendency of this matter. In light of the entirety of the record and the wide latitude afforded to the trial court, we affirm the trial court's division of marital property in this case.

### Alimony

We turn next to Husband's contention that the trial court erred by awarding him rehabilitative alimony rather than alimony *in futuro*. In his brief, Husband asserts that the parties enjoyed an "extravagant standard of living during the marriage" and that, "even after re-education, he will not have the earning capacity to maintain the standard of living enjoyed by the parties during the marriage." He additionally asserts that, after additional education, "he can be expected to initially earn approximately $38,000 per year[,]" while Wife can be expected to earn half-a-million dollars per year. Husband submits that Wife is clearly at fault in this case and that she has the ability to pay alimony *in futuro*.

Wife, on the other hand, asserts that the trial court did not abuse its discretion by awarding Husband rehabilitative alimony in the amount of $2,000 per month for 36 months. She further submits that the trial court "effectively award[ed] Husband additional financial support" during the three-year period by relieving him of any child support obligation. Wife admits that her income is higher than Husband's, but asserts that, as of the date of the divorce, her income from the orthopedic practice was $20,000 per month and that she earned $12,000 per year from Bethel University. Wife contends that she has adjusted her work schedule to permit her to care for the parties' children during the weeks in which she is the residential parent; that Husband "has not diligently searched for full-time employment"; and that Husband earned a six-figure income in the early 2000's, even after the parties relocated to Henry County.

It is well-settled in Tennessee that trial courts have broad discretion when determining whether alimony is needed and, if so, the amount, duration, and nature of the award. *E.g., Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012). As the Tennessee Supreme Court recently reiterated:

> Because a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors, the role of an appellate court is not to second guess the trial court or to substitute its judgment for that of the trial court, but to determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. In determining whether the trial court abused its discretion, an appellate court should presume that the trial court's decision is correct and should review the evidence in the light most favorable to the decision.

*Id*. at 114-15 (internal quotation marks and citations omitted).

Rehabilitative alimony is support designed to assist an economically disadvantaged spouse to obtain education and/or training in order to become self-reliant after a divorce. *Id*. at 115 (citation omitted). Alimony *in futuro*, on the other hand, is long-term support that may be awarded "when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible." *Id*. (citation omitted). Under the Tennessee Code, an award of rehabilitative alimony is preferable to an award of alimony in *futuro*. *Id*. (citing Tenn. Code Ann. § 36-5-121(d)(2)-(3)) (additional citation omitted). Indeed, "'[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony.'" *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 108 (Tenn. 2011) (quoting *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002)). Although the courts consider the parties' marital standard of living when fashioning an award of alimony, it is an "economic reality" that each spouse generally will not be able to enjoy the same standard of living that the couple maintained during the marriage. *Mayfield*, 395 S.W.3d at 115-16 (citation omitted). "Decisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors[.]" *Id*. (citation omitted). The most important factors are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay. *Id*. at 116 (citation omitted).

Tennessee Code Annotated § 36-5-121(i) sets-forth the factors that the court must consider when fashioning an award of alimony. The section provides:

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

10

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121 (2014).

In its April 2014 memorandum, the trial court stated:

Wife's income is $43,973 per month. This figure is based upon a three year average in earnings from Henry County Orthopaedic and Sports Medicine, P.C. - $492,994 in 2011; $429,992 in 2012; and $384,064 in 2013. In addition to that average, $435,683, Wife earns about $50,000 per year from the Henry County General Hospital; $16,000 per year from Bethel University; and $26,000 per year from Gulish Gladwell LLC. The court previously held that Husband had the ability to earn $60,000 per year. Based upon the parties' child custody agreement and the evidence presented at trial, the court reduces that finding to a minimum of $48,000 per year.

Husband has a college degree in electrical engineering with a minor in computer science. During the early part of the parties' marriage, he worked for Oracle and then Septor, a private company of which Husband was part owner, designing and installing computer systems. He has not done this type of work for some years in order to stay at home and care for the parties' children. He expressed a need for additional education in order to get an advanced degree in computer science or a degree in another field such as accounting in order to enhance his ability to obtain employment.

The court is of the opinion that this is a proper case for awarding rehabilitative alimony. That alimony will take two forms. First Husband is awarded alimony in the amount of $2,000 per month for a total of 36 months to be paid by wife. This award is not conditional. Second, the court will order a deviation in the computation of income shares and child support so that Husband's ability to earn will not be considered during the same 36 month period conditioned upon his actively participating in a program to further his education. As a result of this deviation, Husband will receive a larger amount of child support.

As noted above, Husband received marital property valued at $868,220, and the trial court entered an "equalization" judgment against Wife in favor of Husband in the amount of $394,615, payable over a 20-year period at an interest rate of 6 percent, compounded monthly. Thus, in addition to rehabilitative alimony in the amount of $2,000 per month, Husband will receive an additional payment of $2,827.14 per month for a period of 20 years. The trial court found that the martial property awarded to Husband, moreover,

11

included financial accounts totaling $461,555.32. Additionally, Husband is 44 years of age, is neither physically nor mentally disabled, holds a degree in electrical engineering, and has a demonstrated six-figure earning history. Upon review of the record, we cannot say the trial court abused its discretion by awarding Husband rehabilitative alimony and not alimony *in futuro* in this case. We affirm on this issue.

## Tax Exemption

We next turn to Husband's assertion that the trial court erred by *sua sponte* allocating the federal tax dependent exemption applicable to the parties' children to Wife. Husband contends that the agreed permanent parenting plan entered by the court resolved the issue of the federal tax exemption, that no motion to modify the parenting plan was filed, and that no proof on the question was taken by the court. Husband also asserts that Wife most likely will not be able to claim the exemption due to her income. Wife, on the other hand, asserts that the issue of child support was not resolved by the parenting plan. She asserts that the issue of child support and allocation of the federal tax dependent exemption were, therefore, before the trial court. Wife further asserts that allocation of the exemption to her was appropriate because the trial court deviated downward to relieve Husband of his child support obligations and ruled that the matter of child support would be considered at the end of the rehabilitative period.

As noted above, the parties' agreed parenting plan provides, in relevant part:

in the event it would benefit Mother to claim all children, then Mother agrees to pay Father's tax benefit from his return to him and, after deducting this payment, split remaining tax benefit Mother would receive by claiming all the children equally between the parties.

However, as Wife asserts, the question of child support was not resolved by the parenting plan. Additionally, the child support guidelines provide a parent's presumptive child support obligation. *Beyer v. Beyer*, 428 S.W.3d 59, 73 (Tenn. Ct. App. 2013) (citations omitted). Although a trial court may, in the exercise of its sound discretion, deviate from the guidelines to reduce a parent's support obligation, it must make specific findings with respect to "why the application of the Child Support Guidelines would be unjust or inappropriate in the case." *Id*. (quoting *Reeder v. Reeder*, 375 S.W.3d 268, 275 (Tenn. Ct. App. 2012) (citing Tenn. Code Ann. § 36–5–101(e)(1)(A); Tenn. Comp R. & Regs. 1240–02–04–.07(1)(b))).

In this case, the trial court deviated from the child support guidelines to relieve Husband of his child support obligation during the rehabilitative period. It stated that the issue of Husband's child support obligation would be reconsidered at the end of the rehabilitative period and further conditioned the deviation on Husband's "active[] participat[ion] in a program to further his education." The trial court based its decision

on Husband's "expressed . . . need" to obtain an advanced degree to enhance his ability to obtain employment. In its April 2014 memorandum, the trial court stated, "As a result of this deviation, Husband will receive a larger amount of child support [from Wife]." As Wife submits, issues pertaining to the parties' incomes and child support obligations were not resolved by the parenting plan, but by the trial court.

"The courts should consider the tax consequences of their child support orders." *Barabas v. Rogers*, 868 S.W.2d 283, 289 (Tenn. Ct. App. 1993) (citation omitted). Trial courts' "decisions with regard to the allocation of exemptions for minor children are discretionary and should rest on facts of the particular case." *Id.* (citation omitted). Because the issue of child support was not resolved by the parenting plan but was before the trial court, the trial court retained the authority to exercise its discretion with respect to the allocation of the federal tax deduction applicable to the parties' children. *See Byrd v. Buhl*, No. M2001-00070-COA-R3-CV, 2001 WL 1216988, at *3 (Tenn. Ct. App. Oct. 12, 2001); *Miller v. Miller*, No. 02A01-9809-CH-00271, 1999 WL 329777, at *2 (Tenn. Ct. App. May 21, 1999).

Further, although the trial court made no findings or conclusions of law to support its allocation of the federal tax dependency exemption to Wife, it did so within the context of deviating downward to relieve Husband of his child support obligation in order to permit Husband to augment his earning capacity.[5] The trial court stated in its April 2014 memorandum:

> Child support is based upon Wife's earnings of $43,973 per month. Husband's earnings are set at $1,940 per month, the average interest he will receive on the judgment awarded in this memorandum. Based upon those amounts, Wife's child support obligation will amount to about $3956 per month based upon the income shares worksheet attached as Attachment C. The court used term "about" because it could not find evidence of the amount Wife spends providing medical insurance for the parties' children. If the parties can agree on that amount it should be substituted for the amount used by the court in Attachment C. If the parties cannot agree on the amount, the court will conduct an additional hearing. Wife shall be entitled to claim the children as deductions for federal income tax purposes. The issue of child support may be revisited by the court at the end of 36 months or at such time as Husband discontinues participation in a program of furthering his education prior to the expiration of the 36 month period.

We cannot say the trial court abused its discretion by allocating the federal tax deduction to Wife.

---

[5]The trial court's decision to deviate from the child support guidelines during the rehabilitative period was not presented as an issue for our review.

13

However, upon review of the record, we note that it contains two completed child support worksheets, both entered in August 2014. Both worksheets appear to have been completed by Wife's legal counsel. One worksheet appears to set Wife's presumptive child support obligation at $3,939.00. The other appears to set Wife's presumptive child support obligation at $3685.00. The record does not, however, contain an order setting Wife's child support obligation at a fixed, definite amount as required by Tennessee Code Annotated § 36-5-101(a)(2).

The code provides, in relevant part:

> Courts having jurisdiction of the subject matter and of the parties are hereby expressly authorized to provide for the future support of the children, in proper cases, by fixing some definite amount or amounts to be paid in monthly, semimonthly, or weekly installments, or otherwise, as circumstances may warrant, and such awards, if not paid, may be enforced by any appropriate process of the court having jurisdiction, including levy of execution.

Tenn. Code Ann. § 36-5-101(a)(2) (2014). As the Tennessee Supreme Court has noted, the courts' authority to enforce child support orders "by the process of contempt, is statutory[.]" *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975). However, a child support order that is ambiguous cannot be enforced through a contempt proceeding. *Solima v. Solima*, No. M2008-00528-COA-R3-CV, 2008 WL 4963524, at *3 (Tenn. Ct. App. Oct. 17, 2008) (quoting *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 355-58 (Tenn. 2008) ("Vague or ambiguous orders that are susceptible to more than one reasonable interpretation cannot support a finding of civil contempt.")). In this case, the trial court set Wife's child support obligation at "about $3956." Because this amount is not definite as required by the statute, we remand this matter to the trial court for entry of an order setting Wife's child support in a fixed, definite amount.

### Alimony *In Solido*

We turn finally to Wife's assertion that the trial court erred by awarding Husband alimony *in solido* in the amount of $60,000 to pay his attorney's fees and to Husband's request for attorney's fees on appeal. When determining whether an award of alimony *in solido* to pay attorney's fees is appropriate, the trial court must consider the factors currently set-forth in Tennessee Code Annotated § 36-5-101(i). *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011). An award of alimony *in solido* to pay attorney's fees is "appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them." *Id*. (internal citations omitted). In light of the property and financial resources awarded to Husband, we agree with Wife that an award of attorney's fees as

14

alimony *in solido* was not warranted in this case. Accordingly, we reverse the trial court's award of alimony *in solido* to Husband. We similarly decline Husband's request for attorney's fees on appeal.

As our good friend and colleague states in his dissent, a trial court's decision with respect to an award of spousal support is subject to an abuse of discretion standard of review, and "[a]n abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* at 105 (citation omitted). Unlike other forms of alimony, however, an award of alimony *in solido* is not modifiable, and "[a] typical purpose of such an award [is] to adjust the distribution of the parties' marital property." *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001). Further, we have held that, notwithstanding the trial court's discretion to award alimony *in solido* to assist a disadvantaged spouse to pay his or her legal expenses, such an award is "'appropriate . . . *only* when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses.'" *Mimms v. Mimms*, 234 S.W.3d 634, 641 (Tenn. Ct. App. 2007) (quoting *Brown v. Brown*, 913 S.W.2d 163, 170 (Tenn. Ct. App. 1994)) (emphasis added) (internal citations omitted).

In this case, Mr. Gladwell clearly does not lack sufficient funds to pay his own attorney's fees. Mr. Gladwell received an equitable division of the parties' marital property valued at approximately $1,500,000, including more than $400,000 in financial assets, in addition to rehabilitative alimony of $2,000 per month for 36 months. A payment of $60,000 to pay his own attorney's fees will not deplete– i.e., "empty[], exhaust[], or wast[e,]" *Black's Law Dictionary* 532 (10th ed. 2014), – Mr. Gladwell's considerable financial resources. Accordingly, the trial court applied an incorrect legal standard, which constituted an abuse of discretion on this issue.

## Holding

In light of the foregoing, we reverse the trial court's award of attorney's fees as alimony *in solido* to Husband. The judgment of the trial court is otherwise affirmed. Costs on appeal are taxed to the Appellant, Tony Neil Gladwell, Jr., and his surety, for which execution may issue if necessary. This matter is remanded to the trial court for the collection of costs and for further proceedings as may be necessary consistent with this opinion. Upon remand, the trial court is instructed to enter an order setting Wife's child support obligation at a definite, fixed amount pursuant to the child support guidelines.

_____
ARNOLD B. GOLDIN, JUDGE

15